ANDREW PASSINGER, Respondent, *v.* WILLIAM THORBURN, Appellant.

BREACH OF WARRANTY, AND RULE OF DAMAGE. Where there is a special warranty, and a breach, the plaintiff is entitled to such damages as were the natural and necessary consequences of the breach.

Where the defendant sold cabbage seed, and warranted the same to produce Bristol cabbages, which warranty was untrue, *Held*, the damages would be the value of a crop of Bristol cabbages, such as ordinarily would have been produced that year, deducting the expense of raising the crop, and also the value of the crop actually raised therefrom.

*A. J. Parker*, for the appellant.

*S. Hand*, for the respondent.

DAVIES, Ch. J. This is an action brought to recover damages for a breach of warranty. The plaintiff purchased of the defendant a quantity of cabbage seed, and, according to the facts as found by the jury, warranted the same to be Bristol cabbage seed, and that such seed would produce Bristol cabbages. The jury found that it was not Bristol cabbage seed, and that it did not produce Bristol cabbages. The judge charged the jury that, if the warranty was untrue, then the plaintiff would be entitled to such damages as were the natural and necessary consequence of the breach; that the damages would be the value of a crop of Bristol cabbages, such as they should believe would ordinarily have been produced that year, deducting all expense of raising the crop, and also deducting the product or value of the crop actually raised. The jury found a verdict for the plaintiff, and judgment thereon was affirmed at General Term, and the defendant now appeals to this court. The question presented for decision is, whether the rule of damages laid down for the government of the jury is the correct one. The fact and nature of the warranty, and the breach thereof, are disposed of adversely to the defendant by the verdict of the jury.

The rule upon this subject, as stated by Lord CAMPBELL, in *Smeed* v. *Ford* (102 Eng. Com. Law, 612), is found in *Had-*

*ley* v. *Buxendale* (9 Exch., 341), where it is laid down in accordance with the Code Napoleon, with Pothier, with Chancellor KENT, and with all other authorities, that the damages which one party to a contract ought to receive, in respect of a breach of it by the other, are such as either arise naturally, that is, in the usual course of things, from the breach itself, or such as may reasonably be supposed to have been contemplated by the parties when making the contract, as the probable result of the breach. Sedgwick on Damages (p. 290) says, it seems originally to have been held that the measure of damages, when the thing sold with warranty did not answer the warranty, was the difference between the price paid and the actual value; but it is now well settled that the rule is, the difference between the actual value and the value that the article would have possessed if it had conformed to the warranty. The same rules are enunciated by SELDEN, J., in delivering the opinion of the court in *Griffin* v. *Colver* (16 N. Y., 489), when he says: "Profits which would certainly have been realized but for the defendant's default are recoverable; those which are speculative or contingent are not. The broad general rule is, that the party injured is entitled to recover all his damages, including gains prevented as well as losses sustained, and this rule is subject to but two conditions; the damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, must be such as might naturally be expected to follow its violation, and they must be certain, both in their nature and in respect to the cause from which they proceed."

The following cases illustrate the application of these rules: *Bonadaile* v. *Bruxton* (8 Term, 535) was an action to recover damages for a breach of warranty, in the sale of a chain cable. The defendant sold to the plaintiff a chain cable, as a substitute for a rope cable, of sixteen inches, for the use of the plaintiff's ship, and warranted the chain cable should last two years; that the plaintiff used the chain cable from time to time until it broke, and that, in breach of the warranty, the chain cable did not last two years, as the

substitute for the rope cable, but, on the contrary, within the two years, and while the plaintiff's ship was held by the chain cable, one of the links thereof broke, and thereby the chain cable and an anchor of the plaintiff to which it was affixed were wholly lost to the plaintiff. The jury found for the plaintiff the value, as well of the lost anchor as of the cable. On motion for a new trial, it was contended that the plaintiff could not recover for the loss of the anchor as for a loss consequent on the failure of the cable, for though the anchor followed the insufficient cable, yet this was a consequence to which the warranty did not extend, for the cable only was warranted. Dallas, Ch. J., said, the defendant warrants the cable sufficient to hold the anchor, and it is found not to be sufficient. The holding of the anchor by the cable is of the very essence of the warranty. Park, J., said, the use of the cable is to hold the anchor. Upon the breaking of the link, the cable became insufficient to hold the anchor, and the pilot then ordered it to be slipped, in the exercise of a prudent discretion, to save both ship and cargo.

In *Page* v. *Pavey* (8 Carr. & Payne, 769), the plaintiff sued for a breach of warranty in the sale of wheat. The declaration alleged a sale of old cone wheat for seed, with a warranty that it would grow, and a breach that it did not grow, whereby the wheat became of no value to the plaintiff, and he was deprived of great gains which would have arisen from the straw and corn which would have been produced, if it had grown, and it was held that the plaintiff could give evidence of what the value of the crops might have been with a view to make out his damages, claimed in his declaration.

*Jones* v. *Bright* (5 Bing., 533) was an action for damages on sale of copper for sheathing a ship. The case was decided on the ground that there was an express warranty that the copper sold would answer the purpose for which it was purchased. It did not, and plaintiff recovered. Best, Ch. J., said: "In a contract of this kind, it is not necessary that the seller should say, 'I warrant;' it is enough if he says the article which he sells is fit for a particular purpose. Here, when Fisher, a mutual acquaintance of the parties, introduced

them to each other, he said, 'Mr. Jones is in want of copper for sheathing a vessel,' and one of the defendants answered, 'We will supply him well.' That constituted a contract, and amounted to a warranty."

Again, the chief justice observes : "If a man sells a horse, generally, he warrants no more than that it is a horse ; the buyer puts no question, and perhaps gets the animal the cheaper. But, if he asks for a carriage horse, or a horse to carry a female, or a timid or infirm rider, he who knows the qualities of the animal and sells, undertakes, on every principle of honesty, that it is fit for the purpose indicated. The selling upon a demand for a horse with particular qualities, is an affirmation that he possesses these qualities. So it has been decided, if beer be sold to be consumed at Gibraltar, the sale is an affirmation that it is fit to go so far."

In *Brown* v. *Edgerton* (2 Mann. & Gran., 279), the defendant was applied to, to furnish a rope for a crane to be used for the purpose of hauling up and letting down pipes and other heavy casks. The defendant undertook to supply the rope for the plaintiffs' crane, and the jury found the rope was not fit for that purpose. The rope broke, whereby the plaintiffs lost a pipe of wine, which was being raised by it. The defendant was held liable for the damages occasioned, for the breach of the warranty, that the rope was fit for the purpose for which it was purchased.

Maule, J., said: "The evidence given in the case satisfactorily showed that the defendant undertook to furnish a rope which would fit the crane and raise the pipes of wine. The jury having found that the rope was an unfit one for that purpose, the defendant has been guilty of a breach of the implied warranty alleged in the declaration."

The case of *Randall* v. *Roper* (96 Eng. Com. Law, 82) is, in many particulars, like the case at bar, and deserves a careful consideration. The declaration charged that the defendant, by warranting thirty quarters of seed barley to be chevalier seed barley, sold the same to plaintiffs, and averred that said seed barley was not chevalier seed barley ; that said plaintiffs, having purchased said seed barley for the pur-

pose of reselling, did, without having any notice or knowledge of said breach of warranty, and believing said seed barley to be chevalier seed barley, resell the same, warranting it to be chevalier seed barley, when in fact it was not chevalier seed barley, and that the buyers had sowed the same without notice of that fact in their respective lands, as and for chevalier seed barley, and the same not being chevalier seed barley, yielded and produced much less and inferior crops and crops of an inferior quality of barley than the same otherwise would have done had the same been chevalier seed barley. It was agreed that the difference in price between chevalier seed barley and the seed barley delivered was £15, and that the loss to the parties who had purchased from the plaintiffs, by reason of the difference in their crops, was, in all, £261 7s. 6d. These purchasers had made claims upon the plaintiffs for compensation, and the plaintiffs agreed to satisfy them. A verdict was taken for £261 7s. 6d., with leave to the defendant to move to reduce it to £15. The rule was refused. Lord CAMPBELL said: "I am clearly of opinion that, in case the plaintiffs had paid the damages sustained by their vendees, being compelled to do so for breach of a warranty similar to that given by the defendant to the plaintiffs, they would have been entitled to recover such damages as special damage in this action. It was a probable, a natural, even a necessary consequence of this seed not being chevalier seed barley, that it did not produce the expected quantity of grain. That is a consequence not depending upon the quality of the soil, but one necessarily resulting from the contract as to the quality of the seed not being performed." ERLE, J., said, the question is, what amount of damages is to be given for the breach of this warranty? The warranty is, that the barley sold should be chevalier barley. The natural consequence of the breach of such a warranty is, that the barley which has been delivered having been sown, and not being chevalier barley, an inferior crop has been produced. This damage naturally results from the breach of the warranty, and the ordinary measure of it would be the difference in value between the inferior crop produced and that which would have been pro-

duced from chevalier barley.  CROMPTON, J., said: " Taking the
narrowest rule as to the probable and necessary consequences
of a breach of contract, these damages fall within it, and all
the judges held and agreed that the plaintiffs were entitled
to recover the damages sustained by their vendees upon a
breach of the warranty."   This is the well-settled law in this
country, it having been held that, where an article is sold
with a warranty, and the vendee resells with a like warranty,
the sum paid by him in an action by his sub-vendee for a
breach of that warranty is *prima facie* evidence of the
amount which he will be entitled to recover from his vendor
in an action in his own behalf. (*Reggio* v. *Bragiotti,* 7 Cush.,
166; *Armstrong* v. *Perry,* 5 Wend., 535; *Blasdale* v. *Bab-
cock,* 1 Johns., 518.)  And this court, in *Muller* v. *Eno* (4
Kern., 597), held that a purchaser may recover for a breach
of a warranty, although he has sold the goods and no claim
has been made on him, and that it was not necessary for him
to show the price on the resale.   That price may be evidence
of the damages, but does not furnish the rule in respect to
them.

In *Smeed* v. *Ford* (*supra*), the question, what damages the
plaintiff was entitled to recover, on failure to deliver a
threshing machine according to contract, Lord CAMPBELL
observed, that the defendant knew that the plaintiff required
the machine for the purpose of threshing wheat in the field.
Then, was it not contemplated by the parties, that, if the
machine was not delivered by the time fixed, damage to the
wheat would in all probability be the result, particularly in
such a variable climate as this ?   Owing to the non-delivery
of the machine, the wheat was stacked and afterward dam-
aged by the rain which ensued.   This injury, and the loss and
expense which it involved, were the natural results of the
defendant's delay.   They were also results which the parties
must have foreseen.   CROMPTON, J., adopts the rule, that
damages which may reasonably be supposed to have been
contemplated by the contracting parties, are damages which
naturally arise from a breach of the contract.   He adds: " I
doubt whether, in this case, it is the duty of a judge to lay

down more to the jury than that the plaintiff is entitled to such damages as are the natural consequences of the breach of the contract. The question, what are such natural consequences, is, I think, in such case, rather for the jury than for the judge, just as it is for them, not for him, to assess the amount of the damages."

In the present case, it cannot be doubted that the damages which this plaintiff has sustained are such as arise naturally from the breach of the defendant's warranty. His engagement was, that the seed he sold was Bristol cabbage seed, and would produce Bristol cabbages. It may therefore have been reasonably supposed to have been in the contemplation of the parties that if the seed was not Bristol cabbage seed, and would not consequently produce Bristol cabbages, that damage would necessarily accrue to the plaintiff, and would be a natural consequence of such breach. The jury have so said in this case, and we think they came to a correct conclusion.

The plaintiff, in establishing the warranty and its breach, was entitled to a full indemnity. In the language of Ch. J. SHAW, in *Reggio* v. *Bragiotti (supra)*, "In this country the established rule in relation to damages in actions of this nature is, that the plaintiff may recover what he can show that he has actually lost. If the article is wholly worthless, then he shall recover what would have been its value to himself at the time of the warranty, had it corresponded to the terms of the warranty." In the case of *Cary* v. *Gorman* (4 Hill, 625), Mr. Justice COWEN observed: " A warranty on the sale of a chattel is, in effect, a promise that the subject of sale corresponds with the warranty in title, soundness, or other quality to which it relates. It naturally follows, that if the subject prove defective, within the meaning of the warranty, the stipulation can be satisfied in no other way than by making it good. That cannot be done except by paying to the vendee such sum as, together with the cash value of the defective article, shall amount to what it would have been worth if the defect had not existed." That the measure of damages in a breach of warranty on the sale of goods is the difference between the value of

goods, if they had corresponded with the warranty, and their actual value, as they in part were. This rule rests upon sound principles, and is settled by the two carefully considered cases of *Voorhees* v. *Earl* (2 Hill, 288) and *Cary* v. *Gorman* (4 id., 625). It follows, therefore, that the rule of damages, as laid down by the learned justice who tried this action, in his charge to the jury, was correct, and the exceptions thereto cannot be sustained. The counsel for the appellant insists that the judge at the circuit erred in refusing to charge that the contract must be the result of the minds of both parties meeting and agreeing, and unless the defendant intended to make a contract that he would pay for the crop in case of its failure because of the bad quality of the seed, he cannot be made liable to such damages. To the refusal to charge both branches of this proposition, there is a general exception. If the counsel had intended to designate the contract of warranty as that upon which the minds of the parties must have met, he was undoubtedly correct in the position; but this is evidently not what he meant. He alludes to the contract, mentioned and referred to in the second branch of his proposition; that is, that unless the defendant intended to contract that he would pay for the crop in case of failure of the seed to produce the crop warranted, he cannot be made liable in damages. The authorities cited are abundant to show that the defendant must be held responsible for the natural consequences of the contract which he did make, and the legal responsibilities following therefrom, whether he intended to be so liable or not. Ignorance of the law, and of the legal effect of the contract made by him, cannot excuse him from its performance. The law assumes that both parties entered into the contract with full knowledge of the legal rights and duties resulting therefrom ; and whether either of them intended to be thus bound, cannot be a subject of proper inquiry. The judge, therefore, justly refused to charge as requested.

The supposition of defendant as to the use plaintiff intended to make of the seed, was wholly immaterial. The defend-

ant's liability is to be tested by the fact whether he made the warranty, and whether there was a breach; and the extent of that liability, if these two preliminary positions are established, was, what sum was necessary to compensate the plaintiff for the loss he had sustained by the article sold not being of the quality warranted. The judge, therefore, properly refused to charge that the extent of defendant's liability, or the rule of damages to be applied, depended in any manner upon the supposition of the defendant as to the use the plaintiff intended making of the thing sold. Upon the principles discussed and the authorities cited, there was no error committed in the admission of evidence.

The judgment must be affirmed, with costs.

Judgment accordingly.