JAMES PARK, Jr., and others, Appellants, *v.* THE MORRIS AXE AND TOOL COMPANY, Respondents.

(GENERAL TERM, FOURTH DEPARTMENT, JANUARY, 1871.)

Manufacturers of cast-steel sold steel, for axes, to the defendants, " The Morris Axe and Tool Company," which they warranted equal in quality to the best English brand. — *Held,* that the warranty implied that the steel was equal to the best English brand for the manufacture of axes.

*Held,* further, that the name of the defendant was notice to the vendors of the uses to which the steel was to be applied.

And that the measure of damages upon breach of the warranty was the difference in value between the axes made from the steel sold, and their value if the steel had been equal to the best English steel.

THIS was an appeal by the plaintiffs from a judgment entered upon the report of a referee.

The action was upon two promissory notes given by the defendant to the plaintiffs, in payment for a quantity of steel sold. The defendant set up a counterclaim for damages, on account of the quality of the steel. The facts are stated in the opinion of the court.

*Walter S. Poor,* for the appellants.

*Hunt & Green,* for the respondents.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

By the Court—MULLIN, P. J. The plaintiffs were manufacturers of steel, at Pittsburg, in the State of Pennsylvania, and had an office in the city of New York. The defendants were manufacturers of axes at Baldwinsville, in this State. On the 25th of April, 1868, the plaintiffs wrote to defendants a letter, in which they offer to sell them ten tons best axe cast-steel, which they would warrant equal in quality to any brand of English cast-steel.

On the 31st of July, 1868, the defendants reply to the foregoing letter, in which they say they are going to try to use

plaintiffs' steel; that which they had used worked very well; and ordering ten tons, of certain sizes, to be sent, two and a half tons per month, the first installment to be sent by the 15th August.

On the 3d August plaintiffs acknowledged the receipt of defendants' letter, and, in a postscript to their letter, say: "We will warrant ours to be equal in quality to 'Jessup's,' or any other standard brand."

Two tons of steel were sent forward to defendants, and made into axes, which proved to be of inferior quality, by reason, as the defendants allege, and as the referee finds, of the inferior quality of the steel.

The referee has allowed, as damages, the difference in value between axes made from plaintiffs' steel and axes made from best quality of English steel.

The plaintiffs insist that this rule of damages is erroneous, and that the defendants were entitled only to the difference between the price paid and the market price of the best English steel. The principal question on this appeal is, is the measure of damages adopted by the referee the correct one? If not, the judgment must be reversed, and a new trial granted.

Parsons, in his works on contracts, volume 1, page 469, says: "If a thing be ordered of the manufacturer for a special purpose, and it be supplied and sold for that purpose, there is an implied warranty that it is fit for that purpose."

The plaintiffs were manufacturers, and the defendants ordered the steel for the purpose of being made into axes. The case is thus brought within the principle asserted by Parsons, and the referee was justified in finding a warranty that the steel would make as good axes as the best English steel.

The name of defendants' company was "Axe and Tool Company." This was notice to plaintiffs of the uses to which the steel was to be applied; and the warranty must be held to be, that the steel would make either axes or tools of as good a quality as the best English.

The case of *Jones* v. *Bright* (5 Bing., 533) is almost identical in its facts with the one before us. The defendant was a manufacturer and vendor of copper, and the plaintiff applied to him for copper for sheathing a vessel. The defendant replied he would serve him well. The copper was received by plaintiff, put on his vessel, but proved to be defective by reason of some intrinsic defect, and it was held there was an implied warranty that the article was fit for the purpose for which it was sold.

In this class of cases the measure of damages is the difference between the value of the defective article, made from the defective material furnished, and the value of the article if made from the material as represented. (*Passinger* v. *Thorburn*, 34 N. Y., 634; *Milburn* v. *Belloni*, 39 id., 53.)

In other words, the measure of damages in this case would be the difference in value between the axes made from the defective steel, and their value if the steel had been equal to the best English steel. This is the rule applied by the referee.

It is insisted by the plaintiffs' counsel that the defendants persisted in making axes from plaintiffs' steel after it was ascertained the steel was of bad quality, and that they ought not to be allowed damages after such notice.

I agree with the counsel in his proposition; but it does not appear by the evidence that defendants did persist in making axes after they knew of the bad quality of the steel. The only evidence I find on the subject is that of one of the witnesses, who says he tried one of the axes in January or February, 1869, and found it defective. They commenced making from plaintiffs' steel in December, 1868, and made up the whole quantity in four months.

A defect in a single axe, or even in 100 axes, would not, it would seem from the evidence, be conclusive evidence that the steel was of bad quality, as it appears that large numbers made from the best English steel proved defective and were returned.

There are no data before us, nor were there any before the referee, that enabled him to find that the defendants manu-

factured axes after notice that the steel was unfit for the purpose.

None of the exceptions taken by the plaintiffs' counsel to the admission of evidence were well founded; and the judgment must be affirmed.

Judgment affirmed.