JAMES PARKS, Jr., et al., Appellants, *v.* THE MORRIS AX AND TOOL COMPANY, Respondent.

An executory contract for the sale of personal property may be with warranty, and where the warranty is as to its intrinsic quality, which mere observation or inspection will not determine, upon receipt and subsequent discovery of a breach, the vendee can recover upon the warranty; he is not bound to release or offer to return the property; a return, or its equivalent offer, is only necessary where a rescission of the contract is sought; it is neither necessary nor admissible where a warranty simply is relied upon.

*Reed* v. *Randall* (29 N. Y., 358) distinguished.

Where material is sold to be manufactured into articles of merchandise, with warranty of its quality for that purpose, upon a breach, the difference in value between the articles made of the defective material, and similar articles made of material equal to the warranty, is a proper measure of damages. The vendee is not confined to the market prices in ascertaining that difference.

(Argued September 23, 1873; decided January term, 1874.)

APPEAL from a judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of defendant, entered upon the report of a referee. (Reported below, 4 Lans., 106; 60 Barb., 140.)

This action was brought upon two promissory notes given by defendant, in part payment for ten tons of steel purchased by it of plaintiffs. The answer set up, as a counterclaim, a warranty as to the quality of the steel, and a breach thereof. The contract was by letters, the substance of which is set forth in the opinion. The referee found that there was an express warranty ; that defendant, relying thereon, manufactured 2,000 dozen axes from the steel ; that the steel was not of the quality warranted, but much inferior thereto, and by reason thereof the axes so manufactured were worth $1.50 per dozen less than they would have been had the quality been as warranted, and he allowed defendant the amount of damages thus ascertained, to wit, $3,000. Further facts appear in the opinion.

*Walter S. Poor* for the appellants. This is an executory contract, and the rule applicable to executed sales with warranty does not apply. (*Pomeroy* v. *Shaw*, 2 Daly, 267 ; *Reed* v. *Randall*, 28 N. Y., 358 ; *Rust* v. *Eckler*, 41 id., 488 ; *Peterson* v. *Ayres*, 24 E. L. & E., 382.) A breach of a warranty does not defeat a sale, but entitles the vendee to recover damages. (*Reed* v. *Randall*, 29 N. Y., 358, 369 ; *Muller* v. *Eno*, 14 id., 597 ; *Gillespie* v. *Torrance*, 25 id., 306 ; *Chanter* v. *Hopkins*, 4 M. & W., 399 ; *Behn* v. *Burness*, 3 B. & S., 751, 755 ; *Bannerman* v. *White*, 10 C. B. [N. S.], 844 ; *Voorhees* v. *Earl*, 2 Hill, 288.) The receipt and conversion of goods after an opportunity to examine, without notice of the defect in them and offer to return them, is an admission that the conditions of the contract have been fulfilled, and estops the vendee from recovering for a defect in quality. (*Pomeroy* v. *Shaw*, 2 Daly, 267 ; *Reed* v. *Randall*, 29 N. Y., 358 ; *Weaver* v. *Wisner*, 51 Barb., 638 ; *Leavenworth* v. *Packer*, 52 id., 132 ; *Delafield* v. *De Grauw*, 9 Bos., 1 ; 3 Keyes, 467 ; *Pike* v. *Nash*, 1 id., 335 ; *Fisher* v. *Samuda*, 1 Camp., 190 ; *Hopkins* v. *Appleby*, 1 Stark., 477.) The terms of an express warranty will not be extended by implication. (*Baldwin* v. *Van Deusen*, 37 N. Y., 467 ; *Bartlett* v. *Hoppock*, 34 id.,

118; *Pickering* v. *Dowson*, 4 Taunt., 779; *Dickson* v. *Zizinia*, 10 C. B., 602; *Parkinson* v. *Lee*, 2 East, 314; *Owens* v. *Dunbar*, 12 Irish L. R., 304; *Kain* v. *Old*, 2 B. & C., 634.) When goods are *in esse* and may be inspected, and the seller is not guilty of fraud, the rule *caveat emptor* applies. (*Parkinson* v. *Lee*, 2 East, 314; *Seixas* v. *Woods*, 2 Cai., 48; *Snell* v. *Moses*, 1 J. R., 96; *Hargous* v. *Stone*, 5 N. Y., 73; *Burne* v. *Dord*, id., 95.) When the seller is the manufacturer of the goods, the utmost limit of the implied warranty is that there are no defects in quality, of which the seller is aware. (*Hoe* v. *Sanborn*, 21 N. Y., 552.) On a sale of goods *in esse*, specifically described, which may be examined by either party, there is no implied warranty. (*Barr* v. *Gibson*, 3 M. & W., 390; *Holden* v. *Dakin*, 4 J. R., 421; *Gomperz* v. *Bartlett*, 2 E. & B., 849.) On the sale of a known, described and defined article, stated to be required for a particular purpose, there is no warranty that it shall answer the intended purpose of the buyer. (*Chanter* v. *Hopkins*, 4 M. & W., 399; *Ollivant* v. *Bailey*, 5 Q. B., 488; *Mason* v. *Chappell*, 15 Grat., 584; *Prideaux* v. *Burnett*, 1 C. B. [N. S.], 613; *Prideaux* v. *McMurray*, 2 F. & F., 225; *Prentice* v. *Dike*, 6 Duer, 220; *Hoe* v. *Sanborn*, 21 N. Y., 352.) The measure of damages in an action for the breach of warranty in the sale of goods is the difference between the value of the article as it was at the time of sale, and its value had it been as represented. (*Muller* v. *Eno*, 14 N. Y., 597; *Hoe* v. *Sanborn*, 36 id., 93; *Leonard* v. *N. Y. A. and Tel. Co.*, 41 id., 544; *Passenger* v. *Thorburn*, 34 id., 634; *Millburn* v. *Belloni*, 39 id., 53; *Griffen* v. *Colver*, 16 id., 489; *Smeed* v. *Ford*, 1 El. & El., 602; *Brown* v. *Coddington*, 2 M. &. G., 279.) The purpose of the law, in the absence of fraud, is not punishment, but compensation. (Sedg. on Meas. Dam., 8; *Dana* v. *Fiedler*, 12 N. Y., 40.)

*Mr. Green* for the respondent. An action for a breach of warranty is an affirmance of the sale, and requires no rescission or offer to rescind. (*Alden* v. *Eno*, 14 N. Y., 602.) The

measure of damages is the difference between the value of the article manufactured from the defective material and what would be its value if made from material as warranted. (*Passenger* v. *Thorburn*, 34 N. Y., 634; *Millburn* v. *Belloni*, 39 id., 53; *Messmore* v. *N. Y. Shot and Lead Co.*, 40 N. Y., 427; *Heinemann* v. *Heard*, 50 id., 37.)

JOHNSON, C. The contract between these parties was effected by correspondence, from which their intention is to be collected. It began by a letter from the plaintiffs, who style themselves manufacturers of all descriptions of steel, addressed to the defendant, The Morris Ax and Tool Co. The plaintiffs say: " In the hope of opening a trade with you, we quote you ten tons of best ax cast-steel, which we will warrant equal in quality to any brand of English steel, at seventeen and a half cents per pound, net cash here. We hope you may be induced to give this proposition your careful consideration; certainly the great difference between the price of English steel and ours would justify a careful test of the latter." To this letter, dated April 25, 1868, the defendant replied under date of July thirty-first. Referring to the plaintiffs' letter, they say: " We are going to try and use your steel; that already sent works very well, and you may enter our order for ten tons," on terms which they state. To this the plaintiffs, on the third of August, answered, proposing other terms as to price, and soliciting an order from defendant and closing with a postscript, " we will warrant ours to be equal in quality to Jessup's or other standard brands." In answer to this letter, under date of August sixth, the defendant accepts the plaintiffs' offer, saying, " you may ship us the steel as you propose."

Upon this correspondence it may be observed, in the first place, that the test of their steel which the plaintiffs suggested, appears to have been made by the defendants, and that finding it to work very well, as they say, they entered into the contract for the larger amount of ten tons.

In examining the questions principally debated in respect to this contract, it will be convenient to consider first

the import of the language employed by the parties, and then to see whether any rule of law interferes to prevent full force being given to the agreement which they entered into. The plaintiffs proposed to sell to the defendant ten tons of steel of their manufacture, which they qualify as best ax cast-steel, and which they say they will warrant equal in quality to any brand of English steel. This language imports an express warranty in respect to the quality of the steel to be delivered. The contract defines the quality, for it is ax cast-steel which is spoken of, and that, in this connection, means steel for the manufacture of axes. Such is the fair import of the language of the plaintiffs in inviting the defendant to become a purchaser. This was the basis on which the plaintiffs' proposition was finally accepted by the defendant, and it is, in my opinion, to be deemed to have received this engagement from the plaintiffs simultaneously with the delivery of the property. Obviously, mere inspection could not determine whether the steel delivered was the best ax cast-steel and equal in quality to any English brand. In order, therefore, to any substantial protection of its rights, the defendant was compelled to rely upon the warranty. An express warranty, accompanying the delivery of personal property upon an executory contract, is not unlawful, nor against public policy, and the question must be, therefore, one of interpretation, whether in fact such a contract has been entered into. The case of *Reed* v. *Randall* (29 N. Y., 358) is not inconsistent with this view. All it decides is, that in an executory contract words of description are to be regarded as merely defining the thing sold and to be delivered, and as imposing conditions on the seller, which the buyer must see have been fulfilled before complete acceptance. In the particular case the words which were claimed to create a warranty expressed no other or greater obligation than the law implied from the description of the article. Upon this ground the court held that a breach of the contract was not a breach of warranty, but a mere non-compliance with the contract that the defendant had agreed to fulfill. It was in respect to such

a contract that the doctrine was announced that the remedy of the vendee to recover damages, on the ground that the article furnished does not correspond with the contract, does not survive the acceptance of the property by the vendee after opportunity to ascertain the defect, unless notice has been given to the vendor, or the vendee offers to return the property ; but that case does not deny that a warranty may accompany an executory contract, and may be enforced as such, and where the warranty relates not to the external characters of the article sold, but to its intrinsic quality, not the subject of the direct and immediate observation of the senses, it is essential to the protection of the rights of the party purchasing that the contract should have effect as a warranty.   The cases of *Muller* v. *Eno* (14 N. Y., 597); *Gillespie* v. *Torrance* (25 id., 306), and *Rust* v. *Eckler* (41 id., 488), and particularly the opinion of WOODRUFF, J., support the view above taken; and the case of *Day* v. *Pool* (52 N. Y., 416), published since this opinion was first prepared, authoritatively confirms the same view.   Where a rescission is sought, of course there must be a return of the goods or an equivalent offer, but where a warranty is relied on, the sale is admitted, and in such a case a return is neither necessary nor admissible, unless it has been expressly provided for in the contract.

If the foregoing observations are well founded, then the plaintiffs were not entitled, as matter of law, to a judgment in their favor, either upon the ground that no warranty was proved, or because the defendant had not offered to rescind the contract and return the goods; nor upon the ground that any defect in the steel was waived by the use of it by the defendant. In the view we take of the contract, the defendant, in using the steel in its manufacture of axes, was pursuing the course with a view to which the warranty was given.   It had made the preliminary test, as suggested in the plaintiffs' first letter, and it had resulted satisfactorily.   Tests were continued during the process of manufacture, and there is no preponderance of proof, to say the least, that the defendant did not communicate to

the. plaintiffs the unsatisfactory character of the steel as soon as it became satisfied that it was defective. Whether the defendant used reasonable care and diligence to discover the defect. in the steel, was, upon the evidence, a question of fact for the referee, and the plaintiffs were, therefore, not entitled to have it determined in their favor as matter of law.

The rule of damages applied by the referee· was correct. He found that the defendant, relying on the plaintiffs' warranty, used the steel in the manufacture of 2,000 dozen axes; that it was not of the quality warranted, but inferior, and that by·reason thereof the axes were of a less value to the extent of one and a half dollars a dozen than they would have been if the steel had been equal in quality to the best brands of English steel. The steel having been bought to manufacture into axes, and the warranty having been of its quality for that purpose, and its having been employed by the vendee in the making of axes, these damages seem to be the direct and immediate consequence of the defective quality of the steel. If the parties considered, at all, the consequences which would flow from defects in the quality of the steel, they could not have failed to see that the result would be that the defendant would expend its time, labor and money in making axes, which, when made, would be worth less than they would have been if made of material equal in quality to the requirements of the warranty. The consequent damages could not be less than the difference, in value between the articles made of the defective material and similar articles made of material equal to the warranty, and there is consequently no hardship, but an obvious justice, in the allowance of such damages. The principles established and illustrated in *Leonard* v. *N. Y., etc., Telegraph Co.* (41 N. Y., 544); *Passinger* v. *Thorburn* (34 N. Y., 634); *Milburn* v. *Belloni* (39 N. Y., 53); *Messmore* v. *N. Y. Shot Co.* (40 N. Y., 422), and in the cases therein cited, sustain the position that damages directly consequent on the breach of a warranty, and fairly to be deemed in the contemplation of the parties, may be recovered; indeed, it is not easy to conceive of a case more

truly illustrative of the principle than that before us, for it would be wholly illusory to confine the defendant to the difference in value between the steel it received and steel as good as the warranty called for. As well in the case of *Passinger* v. *Thorburn* (*supra*) might the court have confined the plaintiff to the difference in price between the two sorts of cabbage seed.

There remain to be considered some questions in respect to the admission of evidence. A witness was asked by the defendant, "How much less those 600 dozen axes were worth than they would have been if manufactured of English steel?" This was objected to by the plaintiffs as incompetent; not the proper method of proof; the market value is the test. It was admitted, and the plaintiffs excepted. As the objection was worded, it seems to me to call attention only to the position that the question was faulty in not asking for the market value. In that aspect, the case of *Muller* v. *Eno* (14 N. Y., 597) is a complete answer; for it is there established that the rule of damage is the difference of value, and that the market price is one mode, but by no means the only mode of arriving at that difference. It is now contended that the question is objectionable, as calling for a comparison of value between these axes and axes made of English steel, and that the true comparison should have been with axes made of this steel, if as good as English steel. While this last inquiry would have given the real damages, yet the other inquiry was competent as bearing on the question of comparative value. There were axes of English steel with which a comparison could be made, while of axes as good as English steel, with which to make an imaginary comparison, there was no proof. Had the question referred to the selling price it would probably have been objectionable, but, as made, the question called only for a measure of their inferiority in quality to the standard to which they were warranted to be equal. The evidence which the case contains, of the relatively smaller price of axes made of American steel, furnished the other element necessary to the ascertainment of the damages.

Another question objected to was this: "How much less were the axes returned on your hands, made out of this steel, worth than they would have been if the steel had been as it was warranted to be?" I do not see anything objectionable in designating a part of these axes as those which had been returned. That mode of designation did not call for any consideration of the damages they had suffered or the expenses they had caused before they were returned. It had appeared that some .600 dozen had been returned, and this phrase merely called the attention of the witness to those particular axes.

Another question was this: "Did there appear to be any difference as to the number of defective axes manufactured from this steel and best English steel, made by the same workmen, during the same period, in the same manner, at the manufactory of the defendant, and made otherwise from the same material?" When this question was asked it certainly did not appear that the same treatment was not appropriate to the English and to the American steel. If it was, then the question was calculated to elicit a material fact in estimating the relative quality of the steel in question. If it yielded more defective axes than the English steel, the argument, that it was therefore inferior to the English, was certainly a fair one.

The other objections to the admission of evidence do not seem to require any special attention.

After a careful examination I do not find any error, and am of opinion that the judgment should be affirmed.

All concur.

Judgment affirmed.