WILLIAM J. WAIT *et al.*, Appellant, *v.* JOHN E. BORNE, *et al.*, Respondent.

*N. Y. Supreme Court, Fifth Department, General Term, April 12, 1886.*

1. *Agency. Warranty.*—A general selling agent, with authority to sell on credit, may warrant the soundness or quality of the article sold when such is the usage of trade.
   See Note at the end of this case.
2. *Same. Instructions.*—In the absence of knowledge of express instructions not to warrant, a third party is justified in dealing with such an agent upon the assumption that he is authorized to make a warranty of quality.
3. *Same. Implied.*—A party, if he might have relied upon an implied warranty respecting the quality of an article purchased, has an equal right to rely upon the authority of the agent, as an incident to his agency, to express in words that which the law implies.
4. *Same.—Warranty.*—A warranty is to be construed so as to accord with the apparent intentions of the parties; and where the language is ambiguous, the surrounding circumstances may be looked at to ascertain such intention.
5. *Same. Continuing.*—Where the language of a warranty is general, applies to the article sold and not to any lot or portion thereof, and, at the time the warranty was given, no particular quantity had been spoken of, it constitutes a continuing warranty that all the article purchased upon the faith and in consequence of the warranty, prior to the application of a proper test of its quality, should prove satisfactory.

Appeal from an order setting aside a verdict in favor of plaintiff and granting a new trial.

The action is to recover damages for an alleged breach of warranty on the sale by the defendants to the plaintiffs of a quantity of oil manufactured by the former, and known as "Breton oil." The plaintiffs are manufacturers of carpets, in the city of Auburn, and, as the evidence shows, were doing an extensive business. The oil in question was

used by them in the process of manufacturing carpets, and took the place of an article they were then using, known in the trade as "Elaine oil," which was not manufactured by the defendants.

The sale to plaintiffs was made by one S. E. Tucker, a traveling agent or salesman of the defendants, who called upon the plaintiffs at their factory with a sample of the oil, and solicited an order from them. The plaintiffs claim, and give evidence tending to prove, that in order to induce them to purchase and use the oil in their works, Tucker represented to them that he was engaged in introducing a new wool oil manufactured by a secret process known only to the defendants, which they would guarantee equal to any animal wool oil; that it would go as far and remain as long on the wool, and scour out more easily; that he had been studying on the subject for years, and as the result of his labors, had discovered a way to saponify mineral oil, and that an oil which would saponify would scour out easily, and that he would guarantee that this oil would do this and not injure the goods upon which it was used. The plaintiff thereupon ordered a barrel of the oil of Tucker, and said if it worked well they would order more.

This was in February, 1884. and on the 4th day of March following, the oil was shipped from defendants' factory in New York. Afterwards, and on the 8th of April, five barrels more were shipped to the plaintiffs upon their order, and on the 7th day of May following, five additional barrels, all of which were used by the plaintiffs within the period of two months, during which time they manufactured some eighty or ninety thousand yards of carpet from wool to which this oil was applied.

In the process of manufacture, oil of this description is applied to the wool before the same is carded and spun, for the purpose of reducing the electricity in the wool, and to make it pliable in the process to which it is subjected. It becomes necessary to eliminate the same after carding and

spinning the wool before it is woven into carpets. This is accomplished by scouring, and evidence was given to show that proper skill was employed in using and endeavoring to remove the oil, but that instead of answering the description and representations of defendants's agent, the oil remained in the wool, in consequence of which all the carpets in the manufacture of which this oil was used were more or less injured, and plaintiffs were damaged in an amount equal to the verdict.

Proof was also given tending to establish the fact that it is the custom for the manufacturer of compounded oils to authorize his agent to guarantee the same when introducing them to the public.

*W. F. Cogswell*, for appellants.

*C. W. West*, for respondents.

ADAMS, J.—It was earnestly contended by the learned counsel for the appellants, upon the argument of this case, that the recovery herein might be upheld upon the theory of an implied warranty, and while we do not wish to be understood as holding that the complaint does not contain all the elements of a good pleading upon such a cause of action, it must nevertheless be conceded, we think, that the case was tried and submitted to the jury upon an entirely different theory, viz., that of an express warrantee, accompanying the sale of the oil to defendants; and the important question therefore which is presented for our consideration is whether or not the agent, Tucker, had authority to make such a warranty, or, to state it more correctly, had the plaintiffs any right to assume that he was invested with such authority?

Upon the decision of this case when first before this court (7 S. Rep. 113), it was held that an agent employed to do a particular act, is authorized to do it only in the usual and customary way of business, which usage or cus-

tom furnishes the rule by which his authority is to be measured, and that consequently a general selling agent, with authority to sell on credit, may warrant the soundness or quality of the article sold when such is the usage of the trade.

No evidence of any such usage or custom was furnished by the plaintiffs upon the first trial, and for that reason, with others, a new trial was granted.

This difficulty appears to have been obviated upon the second trial, however, and considerable testimony was given by either party tending to prove or disprove the existence of such a custom.

The evidence thus furnished was conflicting and quite contradictory in its character, it is true, and yet we cannot say that it was not sufficient to warrant the conclusion reached by the jury, which establishes as facts in the case that the warranty was made; that it was authorized by the usage or custom of trade, and that such custom or usage was a reasonable one.

The defendant's evidence tends to prove that the warranty thus made by their agent was not only without authority, but was in direct violation of their express instructions to him when he started out upon his mission of introducing their oil into general use.

Whether or not such was the fact is however of little consequence, inasmuch as it is not claimed that these instructions ever came to the knowledge of the plaintiffs, and in the absence of such knowledge on their part, they insist that they were justified in dealing with the agent upon the assumption that he was authorized to make the warranty relied upon.

The general rule is that an agent is authorized to do whatever is usual and customary to carry out the object of his agency, and it is for the jury to say what is usual under the circumstances of a given case.

If, in the sale of goods confided to him, it is the custom of the trade to give a warranty, the agent may give the warranty. Benjamin on Sales, § 624, and cases cited.

Moreover, the purchaser, while bound to take notice of any departure from the usage of trade by an agent, is presumed to understand the benefits conferred as well as the limitations imposed by any particular usage and to contract with reference to them in making a purchase. Easton *v.* Clark, 35 N. Y. 224–232.

It follows, therefore, that in making the purchase of the oil in question, plaintiffs, being aware of what was customary under the circumstances, had the right to rely upon the authority, which usage conferred upon the defendants' agent, to made the representations he did concerning the quality of the oil sold.

It is perhaps unnecessary to consider further this branch of the case, but it occurs to us there is yet another reason why plaintiffs had the right to act upon the assumption that defendant's agent was authorized to give a warranty.

The oil sold was manufactured by the defendants by a process which was known only to them. Furthermore it was manufactured and designed to be used for a particular purpose, and these circumstances created an implied warranty on their part that it was not only free from any latent defect resulting from the process of manufacture, but also that it was fit and proper for the purpose for which it was designed and purchased. Hoe *et al.*, *v.* Sanborn, 21 N. Y. 552; Van Wyck *v.* Allen, 69 id. 61.

This proposition leads almost necessarily to the conclusion that if defendants might have relied upon an implied warranty respecting the quality of the oil purchased, they had an equal right to rely upon the authority of the agent, as an incident to his agency, to express in words that which the law implies. White *et al. v.* Miller, 71 N. Y. 118, 130, 131; Nelson *v.* Cowing, 6 Hill, 336.

In addition to the questions thus far considered, the jury

were permitted to find whether the warranty given by de-
fendant's agent extended to all the oil purchased by the
plaintiffs, or was limited to the first barrel sold. Their ver-
dict justifies the conclusion that they found the warranty
to be a continuing one, and it was for the supposed error
arising from the submission of this question that a new trial
was granted.

A careful examination of the evidence, as well as of the
reasons advanced in the opinion of the learned trial justice,
fails to convince us, however, that any error was com-
mitted in the disposition made of this question at the
circuit.

A warranty should be construed in conformity with the
rule governing the construction of contracts generally, *i. e.*
so as to accord with the apparent intention of the parties,
and where the language is ambiguous, the surrounding
circumstances may be looked at to ascertain the intention
of the parties. Evansville Nat'l Bank *v.* Kaufmann *et al.*,
93 N. Y. 273, 281.

The language of the warranty, in this case, was general.
It applied to the article sold, and not to any lot or portion
thereof. Indeed, at the time the warranty was given, no
particular quantity had been spoken of. The defendants'
agent had called upon plaintiffs for the express purpose
of introducing a new kind of oil which had never before
been used by them, and in order to induce them to purchase
and use it he said he would " guarantee the oil to be equal
to any oil in the market ; " that he would guarantee plaint-
iffs " from any trouble from its use ; " that " he would guaran-
tee the use of this oil in our (defendants,) factory ; " that it
would not injure their goods and that he would guarantee
defendants from any damage to their goods arising from
its use ; and, finally, he added, " this oil will scour easier
than animal oil, but you use it on your wool and in your
scouring process as you have Elaine, and you will be

doubly sure and we will guarantee it as we have talked, if you use it in this way."

The defendants thereupon ordered a barrel and said if it worked well they would order more. Thereafter, and before discovering any defect in the oil, two additional lots were ordered.

These are substantially the terms of the contract as testified to by plaintiffs' witnesses, and, viewed in the light of surrounding circumstances, we are of the opinion that they must be held to have constituted a continuing warranty that all the oil purchased by the plaintiffs upon the faith and in consequence of these representations of the agent, should prove satisfactory and "work well," or, in other words, that the plaintiffs, when they ordered one barrel and said if "*it*" worked well they would order more, had reference, not to the contents of that particular barrel, but to all the oil purchased and used by them prior to the application of a satisfactory test of its quality.

Had they ascertained the result of such a test immediately upon using the quantity first ordered, it is quite possible that the contract of warranty would then have terminated. But such was not the case. On the contrary, the evidence tends to show that they were unaware of any breach of the contract until all the oil ordered by them had been used in the manufacture of carpets, as they had been directed to use it by defendant's agent.

This view of the question would have made it proper for the trial court to have disposed of it as one of law rather than of fact, and consequently to have withheld it from the consideration of the jury. Ridge *v.* Judson, 24 N. Y. 64; White's Bank of Buffalo *v.* Myles, 73 id. 335.

It may, perhaps, be argued, that inasmuch as the meaning and effect of the language employed by the agent, and which constituted the contract of warranty, have been construed differently by different tribunals, and by the same

tribunal on different occasions, it is sufficiently ambiguous or so far susceptible to different constructions as to have made it necessary to submit the question, as one of fact, to the jury. That it was thus disposed of furnished no ground for complaint to the defendants, however, as the charge was more favorable to them than they were entitled to claim.

No error appears to have been committed in the rule of damage stated to the jury as applicable to this case. Pasinger v. Thorburn, 34 N. Y. 634; Milburn v. Belloni et al., 39 id. 53; Borradaile v. Brunton, 8 Taunton, 535; White v. Miller (supra).

Nor did the fact that a bill of particulars had been furnished change the rule in any respect. It doubtless served to limit plaintiff's recovery to the items and amounts specified in the bill, and we are unable to discover that the verdict is in excess of the amount thus authorized.

The evidence of the plaintiff, Wait, of which counsel complains, does not appear to have furnished the basis upon which the verdict was rendered.

The views thus expressed lead to a reversal of the order granting a new trial, and a direction of judgment for the plaintiffs upon the verdict.

BARKER, P. J., and DWIGHT., concur.

---

### Note 5.

#### NOTE ON THE POWER OF AN AGENT TO WARRANT ON A SALE.

The general rule is that an agent is authorized to do whatever is usual and customary to carry out the object of his agency, and it is a question for the jury to say what is usual under the circumstances of a given case. Wait v. Borne, reported above. The purchaser, while bound to take notice of any departure from the usage of trade by an agent, is presumed to understand the benefits conferred, as well as the limitations imposed, by any particular usage and to contract with reference to them in making a purchase. Id.; Easton v. Clark, 35 N. Y. 225-232. And if, in the sale of goods confided to him, it is the custom of the trade to give a warranty, the agent may give a warranty. Wait v. Borne, ante. In this case, the defendants who were the manufacturers of a compound oil to be used in

Note on the Power of an Agent to Warrant on a Sale.

the manufacture of carpets, sold to plaintiff's through their salesman by sample a quantity of their oil to try in the business. and the salesman warranted it to be equal to any animal wool oil for this purpose. Such warranty was made not only without any authority from defendants, but in direct violation of their express instructions to him. These instructions never came to the knowledge of the plaintiffs, but it was shown that it was the custom for the manufacturer of compounded oils to authorize his agent to guaranty the same when introducing them to the public, and that this was a reasonable custom. It was held that, in making the purchase of the oil in question, the plaintiffs, who were aware of what was customary under the circumstances, had the right to rely upon the authority which usage conferred upon the defendants' agent to make the representations he did concerning the quality of the oil sold; and further that, as the defendants manufactured the oil by a process which was known only to them and for a particular purpose, the plaintiffs might have relied upon an implied warranty respecting the quality of the oil purchased by them for such purpose, in the absence of an express warranty; and such being the case, they had an equal right to rely upon the authority of the agent, as an incident to his agency, to express in words that which the law implies.

There is no doubt of the general rule that to a certain extent a principal is bound by the representations of his agent made in effecting the sale of his property. Mayer *v.* Dean, 115 N. Y. 556. Such an agent must be presumed to possess authority to make such representations in regard to its quality and condition as usually accompany such transactions; Id., and his principal cannot receive the fruits of a bargain without adopting the instrumentalities employed by his agent in bringing it to a consummation. Id. Bennett *v.* Judson, 21 Id. 238.

It was held in Bennett *v.* Judson, 21 N. Y. 238, that a vendor of land is responsible for material misrepresentations in respect to its location and qualities made by his agent without express authority and in the absence of any actual knowledge by either the agent or the principal whether the representations were true or false, on the ground that whoever, without knowledge of its truth or falsity, makes a material misrepresentation, is guilty of fraud as much as though he knew it to be untrue. If his agent defrauds a person with whom he is dealing, the principal, who has not authorized or participated in the wrong, may no doubt rescind, when he discovers the fraud, on the terms of making complete restitution; but he cannot retain the benefits and claim immunity on the ground that the fraud was committed by the agent and not by himself. Id. Elwell *v.* Chamberlain, 31 Id. 611; Dawson *v.* Chisolm, 48 Hun, 621; Smith *v.* Tracy, 36 N. Y, 79.

The law presumes a selling agent, in making a sale of merchandise for his principal, to be authorized to sell in the usual manner, and only in the usual manner in which goods or things of that sort are sold. Wait *v.*

Borne, 43 Hun, 639; 26 W. Dig. 262. The usage of the business, in which a general agent is employed, furnishes the rule by which his authority is measured. Id. Accordingly, it was held, in this case, that the general selling agent who has authority to sell on credit, can warrant the soundness of the article sold, when such is the common usage of the trade.

In Easton *v.* Clark, 35 N. Y. 225, the rule was stated to be that an agent cannot bind his principal by disposition of the property in any other way than by a sale in the usual course of trade; and that the purchaser is bound to take notice whether the agent is departing from the usage of trade in the contract which he purposes to make in the name of his principal; and that it is to be presumed that a party dealing with the agent understands the restrictions and limitations imposed by the usage of the trade upon a general agency, and the rule of law that, if the agent departs from such usage, the principal may repudiate his act.

In Smith *v.* Tracy, 36 N. Y. 79, the defendant gave his agent the power and authority to sell his bank stock for cash and imposed a limitation as to price, and the court, citing the rule as stated in Parsons on contracts, held that an agent employed to sell, without express power to warrant, cannot give a warranty which shall bind the principal, unless the sale is one which is usually attended with warranty.

All the authorities concur that, where no express power is given to a selling agent, he is presumed to have conferred upon him by his principal the power to make a sale according to the customs and usages of the trade and nothing more, Wait *v.* Borne, *ante.*

When an owner sells by an agent, it may be presumed, in the absence of all proof to the contrary, that the agent has been clothed with the usual powers, for accomplishing the proposed end. Nelson *v.* Cowing, 6 Hill, 336. Accordingly, in this case, it was held that an agent, whether general or special, who is authorized to sell an article, is presumed to possess the power of warranting its quality and condition, unless the contrary appears.

In Ahern *v.* Goodspeed, 72 N. Y. 108, it was held that an agent authorized to sell property, in the absence of any express limitation of his powers, is authorized to do any act or to make any declaration in regard to the property found necessary to make sale and usually incidental thereto.

An agent or broker having power to sell goods, without any express instruction as to mode, was held, in Andrews *v.* Kneeland, 6 Cow. 354, to have authority to sell by sample or with warranty.

So, in Brayley *v.* Dow, 20 W. Dig. 433, the court stated that an agent employed to sell has power to warrant in cases when the sale is one which is usually attended with warranty, and the principal will be bound, in case the buyer is justified by the nature of the case in believing that the agent has authority to warrant, and has no means of knowing the limitation of his authority. In this case, an agent authorized to sell reaping machines

Note on the Power of an Agent to Warrant on a Sale.

and to give them a pretty good recommendation, was held to have implied power to bind his principal by a warranty.

And in Argersenger *v.* McNaughton, 114 N. Y. 535, it was stated that the general rule is that an agent, employed to do an act, is deemed authorized to do it in the manner in which the business entrusted to him is usually done, and such is the presumed limitation upon his power to act for his principal. See Easton *v.* Clark, 35 N. Y. 225; Smith *v.* Tracy, 36 Id. 79; Upton *v.* Suffolk Co. Mills, 11 Cush. 580.