with five hundred dollars ($500.00), will surrender said premises to the said party of the first part, and not otherwise." Subsequent to the execution of the lease, viz., on or about January 30, 1903, the lessor, Ann Quirk, conveyed the premises to the petitioner, of which conveyance the tenant had due notice. The tenant having failed to pay the rent for the months first above mentioned, these proceedings were instituted. The answer, after specifically denying each material allegation of the petition, sets up a counterclaim for $765, alleged to be due under the covenant above quoted; the tenant averring "that the said Ann Quirk did sell and convey said premises to Ann Foley on or about February 2, 1903, and that neither said Ann Quirk nor said Ann Foley, upon whom said agreement is also binding, have in any respect complied with the provisions of said agreement or covenant, in that they have not, nor either of them, given to said Constantino, tenant, the notice provided for as aforesaid, except that on March 9, 1903, they notified him of such conveyance, nor given or paid to him either of the sums so provided to be given or paid to him in the event of such sale." It is clear to us that the provision that the landlord, in the event of sale, "was to give sixty days' notice in writing, the said sum of $265, together with $500, to surrender said premises," means literally what it says, namely, not that notice of sale was intended, but notice to surrender, and that $265 and $500 should also be given to the tenant to surrender; i. e., as compensation for the surrender and loss of the remainder of the term, if the landlord so desires to end the lease. It is not, therefore, a provision which the tenant could claim the benefit of in the event of a sale to a purchaser who should be willing to continue the lease, as the plaintiff apparently was. It was merely the customary precaution, taken by an owner wishing to sell, so that the property might be sold free of tenancies, if so desired. It was an option, not to the tenant, but to the landlord. The record is barren of any proof that the landlord exercised such option. The mere sale and conveyance of the property by the lessor to the petitioner, and notice thereof to the tenant, did not, as claimed by the latter, have the effect of terminating the lease; on the contrary, it continued unimpaired; and, since it is undisputed that the rent has not been paid for the period in suit, and there being no valid counterclaim or offset to the claim for such rent, the final order in favor of the petitioner was properly made. The final order should therefore be affirmed, with costs.

Final order affirmed, with costs. All concur.

---

### BIRDSINGER v. McCORMICK HARVESTING MACH. CO.

(Supreme Court, Appellate Division, Third Department. March 2, 1904.)

1. SALES—WARRANTY—DEFECTIVE MACHINERY—INJURY TO OPERATOR—ACTION ON WARRANTY.

A corn-husking machine was sold with warranty that it would do good work, and was well made, and of good material. While the purchaser was operating the machine, he threw off the gearing to clean the rollers, but they commenced to revolve, and injured him. A part of the gearing

had become broken. *Held,* that damages for the injury could not be recovered in an action on the warranty, as the injury was not within the contemplation of the warranty.

Appeal from Trial Term, Rensselaer County.

Action by Daniel Birdsinger against the McCormick Harvesting Machine Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

The defendant, in September, 1901, sold to the plaintiff and his brother a machine known as a "corn husker and shredder." In the use of this machine the plaintiff had his hand caught between two rollers, called the "snapping rollers," the office of which was to take the corn from the stalks as the stalks passed through between the rollers. His hand was so mutilated that it was required to be amputated. The contract of sale of this machine contains the following provision: "It is distinctly understood that the above-mentioned machine is purchased subject to the following warranty, and no other: * * * McCormick Harvester Machine Company warrants this machine to do good work, to be well made, of good materials, and to be durable if used with proper care." This action is brought upon this warranty, the plaintiff claiming to be entitled to recover for his injuries as consequential damages for a breach thereof. In operating the machine the plaintiff stood upon a platform directly in front of the machine about three feet back of these snapping rollers into which he pushed the corn stalks. These rollers at times became clogged, and in order to clean them it was necessary to stop the rollers. This was done by means of what is called in the book of instructions a "safety lever," the arm of which is placed directly in front of the man operating the machine, and underneath the board over which the corn stalks are pushed into the machine. By pushing forward slightly with his body upon this lever the gearing to which these snapping rollers are attached is thrown off, so that they cease to revolve, and may be safely cleaned. Upon the day in question, the rollers having become clogged, the plaintiff pressed upon the lever, the gearing was thrown off, and the rollers ceased to revolve. He thereupon proceeded to clean out the rollers with his hand. Suddenly, without warning, the rollers began to revolve, his hand was caught, and the injury occasioned. There is evidence that a part of this gearing by which the rollers were made to revolve had become broken; that this caused a bolt to slip out of its place which thereupon became wedged in the gearing in such a way as to render ineffective this safety lever; that these rollers were thereby set in motion notwithstanding the proper use of the safety lever. The jury has found that the defendant violated its warranty in failing to provide a durable machine, well made, and of good materials, and that the plaintiff's injury was due to the failure of the defendant to provide a machine as warranted; and upon these findings, under the direction of the court, a verdict for substantial damages was rendered in behalf of the plaintiff. An appeal has been taken from the judgment and from the order denying the motion for a new trial.

Dyer & Ten Eyck (E. Countryman, of counsel), for appellant.
Charles I. Webster (William J. Roche, of counsel), for respondent.

SMITH, J. In Rich v. Smith, 34 Hun, 136, the plaintiff sued upon a breach of warranty of a mare. She was in fact vicious, and ran away, injuring the plaintiff, the mare, and the carriage. The trial court stated the measure of damage to be the difference between the value of the mare as she was and her value if she had been as warranted. Presiding Justice James C. Smith, in writing for affirmance of the judgment appealed from, in part says:

"The rule laid down by the judge is that which applies in the case of a general warranty of personal property sold. Where, however, the warranty

is special, having reference to a particular purpose for which the property is to be used out of the ordinary course, a different rule applies. In the latter class of cases the vendee is entitled to recover in case of a breach of the special warranty such damages as either arise naturally—that is, in the usual course of things—from the breach itself, or such as may reasonably be supposed to have been contemplated by the parties, when making the contract, as the probable result of the breach. Passinger v. Thorburn, 34 N. Y. 634, 90 Am. Dec. 753, and cases cited there by Davies, C. J. But where the warranty is general, an accidental damage, even in the vendee's own affairs, is not regarded. As was said by Cowen, J., in Hargous v. Ablon, 5 Hill, 472, 'The search is for immediate and necessary consequences.' "

In Passinger v. Thorburn, 34 N. Y. 634, 90 Am. Dec. 753, the rule is stated in the head note:

"Where there is a special warranty and a breach, the plaintiff is entitled to such damages as were the natural and necessary consequence of the breach."

In White v. Miller, 71 N. Y. 118, 27 Am. Rep. 13, it was held that upon the sale of Bristol cabbage seed there was an implied warranty that the seed was Bristol cabbage seed, and also that such seed was free from any latent defect arising from the mode of cultivation. In that case the measure of damage adopted was the difference in value between the crop raised from the defective seed and a crop of Bristol cabbage such as ordinarily would have been produced that year. In Hoe v. Sanborn, 36 N. Y. 98, where a saw was sold with warranty, the court held the measure of damage to be the difference in the value of the saw as delivered and a saw of the quality as warranted. Parker, J., in writing for the court, said:

"There being no warranty that the saw was fit for any special use, there is no opportunity for the application of the rule that the vendee is entitled to such damages, beyond those contemplated by the rule above stated, as were the natural and necessary consequences of the breach, which has been applied to cases where the warranty has been so specific. Passenger v. Thorburn, 35 Barb. 17; Id., 34 N. Y. 634, 90 Am. Dec. 753. It is only to such cases that this rule has been applied. It was said in Hargous v. Ablon, 5 Hill, 473: 'A warranty or promise concerning a thing being general— that is to say, not having reference to any purpose for which it is to be used out of the ordinary course—the law does not go beyond the general market in search of indemnity against its breach.' See, also, Milburn v. Belloni, 34 Barb. 607. The offer to show the damages which the defendant had sustained consequent upon the failure of the saw to operate was therefore properly overruled."

It may be difficult to sustain the rule that only in case of special warranty can consequential damages be recovered. It has been held that, if a gun or a boiler explodes, a vendee may recover consequential damages for a breach of the warranty that it was well made and sound. Primarily, the contract of warranty is simply a contract to make good to the vendee the value of the article sold. In no case have further and consequential damages been allowed, unless there is indicated an intention to contract as against such further damage. While generally that intention is indicated by a special warranty, it may be, as in the warranty of a gun or a boiler as sound and well made, that the warrantor is presumed to have contemplated as damages personal injuries as being the natural and probable result of a breach of the warranty. In the case at bar we find no special war-

ranty. The warranty is general. The accident was not one which was a natural or probable result of a breach of that warranty. With a break in the machinery, the safety lever might not be expected to work, but it could not reasonably have been anticipated that the rollers would stop revolving for a sufficient time to induce the operator to put his hands upon them, and then, without apparent cause, commence to revolve, and cause the injury which has been here suffered. This is not such a case, then, as with a general warranty there can be held to have been contemplated any such consequential damages.

The respondent contends, however, that while this warranty is a general warranty in form, inasmuch as the machine has a single use, to wit, the shredding and husking of corn, the legal interpretation of the warranty is that the machine is well made, and suitable for that purpose. He then argues that there is in legal effect a special warranty, which brings the case within the authority of those cases authorizing the recovery of consequential damages. It is not enough, however, to authorize the recovery of all consequential damages that the warranty should be special. The nature of the warranty must be such as to indicate the damage suffered as that contemplated by the contract of warranty. Within the respondent's contention as to the legal effect of this warranty, if a quantity of corn should be bruised in passing through the machine, such damage might well be held to be consequential damage within the contemplation of the parties, and as such recoverable. From a warranty that this machine was of good material and well made for the purpose of husking and shredding corn, no promise can legally be implied to compensate the vendee for personal injuries suffered in the operation of the machine. In Bruce v. Fiss, 47 App. Div. 273, 62 N. Y. Supp. 96, consequential damages were allowed for a breach of a warranty of a horse that it was "sound, kind and true, and gentle and kind in harness, and suitable for use by plaintiff in his profession as a physician to drive in harness as a carriage horse." Justice Cullen, in writing for the court, says: "We think one of the most natural and probable results of a breach of this warranty and from the viciousness of the horse would be injury to the vehicle and its occupants." The ultimate question in the consideration of all contracts is the determination of the real intention of the parties. In this contract of warranty, whether it be construed as special or general, we are unable to find any intent to become liable for any damage suffered beyond making good to the vendee the machine as warranted.

Other objections to this judgment are urged by the appellant, which it thus becomes unnecessary to consider. The judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event.