DANIEL MESSMORE, Respondent, v. THE NEW YORK SHOT AND LEAD COMPANY, Appellant.

As a general rule, the damages recoverable upon a breach of contract include gains prevented as well as losses sustained, provided such gains are certain, and such as would have naturally resulted from performance. MASON, J.

Ordinarily, in such cases, the difference between the contract price and the market price, at the time and place of delivery of the article contracted to be sold or furnished, is the measure of damages; but, where the vendor, knowing that the purchaser has an existing contract for a re-sale at an advanced price, and that the purchase is made to fulfill such contract, agrees to supply the article to enable him to do so, a different rule prevails, and upon breach, the purchaser may recover the profits upon the re-sale, of which he has been deprived by the default of the vendor.

Accordingly, where the plaintiff having contracted to sell to the State of Ohio, a large quantity of bullets of a certain quality and at a fixed price, deliverable at Columbus, O., made a contract with the defendant, at New York, by which the latter agreed to manufacture and deliver to him the same quantity and quality of bullets, and at the time of making it, he informed the defendant of his arrangement with the State of Ohio, and that he was contracting with him for the bullets in order to carry out that arrangement; in an action against the defendant for breach of his agreement—Held, that the difference between the price the plaintiff was to receive, and the price at which the defendant was to furnish the bullets, was properly recovered as damages.

Though the contract between the parties was in writing, the fact that at the time of making it, the defendant was notified by the plaintiff of his object in entering into it, and that it was to enable him to fulfill his previous agreement, the terms of which were stated, may be proved by parol.

Where the contract under such circumstances was to deliver at such transportation lines in New York as the plaintiff should direct, to be sent to Columbus, Ohio, the plaintiff could recover the difference between the contract price and the market price in the latter place, if damnified to that extent. DANIELS, J.

Where upon a contract for the manufacture of an article of a particular quality, the article delivered is so defective as to authorize the purchaser to decline to accept it, he may, after the tender of it to the vendor and his refusal to receive it back, sell it at the best price he can obtain, without notice to the defendant of the time and place of sale. MASON, J. (DANIELS, J., contra.)

APPEAL from a judgment of the General Term of the New York Common Pleas, affirming a judgment for the plaintiff at Special Term.

The action was brought to recover damages for a breach of contract.

It appeared upon the trial of the cause, that in June, 1861, the plaintiff made a contract with the defendant, at New York city, in writing, as follows:

NEW YORK, *June* 8, 1861.

Mr. DANIEL MESSMORE, No. 23 William Street:

Dear Sir—We will fill your order for 100,000 lbs. of Minie bullets—58 calibre, U. S. Rifle Musket—and deliver them on board such lines as you may direct, as rapidly as possible, on the following terms:

The price to be 7c. per lb. If packed in kegs the charge to be 12c. per 100 lbs., and cartage 50c. per ton. The terms of payment to be *prompt cash* for each lot as delivered, to be paid on presentation of invoice and bill of lading.

Respectfully yours,

N. Y. SHOT AND LEAD CO.,

By J. E. GRANNISS.

At the time the plaintiff ordered these bullets he had a contract to furnish the State of Ohio with that number and that quality at the price of seven and three-fourths cents per pound and the expenses of transportation, delivered at Columbus, Ohio. The plaintiff testified, under objection on the part of the defendant, that the contract was in writing, and the defendant's obligations must be governed thereby, that he told the agent of the defendant at the time of giving his order, of this arrangement with the State of Ohio, and that the defendant's agent refused to enter into the contract until he had seen plaintiff's order from the Ohio State government, which was shown him. By that order the first 10,000 lbs. were to be sent by express; the rest by regular freight lines. The first 10,000 lbs. of bullets were

manufactured by the defendants and shipped by them at the Adams Express Company Office in New York, directed to the quartermaster-general of Ohio, at Columbus. They sent the bill for them to the plaintiff, who paid it. Soon after, they sent the second lot of 10,000 lbs. by railroad. The plaintiff had, in the meantime, received information that the bullets were not according to the contract and were rejected, and going immediately to Ohio, the two lots sent forward were examined there by him and the quartermaster-general, and found to be of all calibres and useless for the purpose for which they had been bought. The plaintiff offered to return the bullets to the defendants, and they declining to receive them, he caused them to be sold at Columbus for the best price he could get, four and one-half cents a pound, without notice to them. This was sworn, by Ohio witnesses, to be all they were worth. The plaintiff was permitted to prove, under the objection of the defendant, that bullets of the calibre contracted for were worth, in Columbus at that time, nine cents per pound. At the close of the evidence, the plaintiff submitted to the jury two different computations of the damages on two different bases; one giving to him the difference between the contract price and what he would have obtained from the State if the contract was carried out, deducting what he had received net for the sale of the bullets in Columbus at four and one-half cents a pound, and adding what he had paid the defendants for the first lot. This computation amounted to $1,128.50. The other giving him the difference between nine cents a pound, the price in Ohio, and the contract price of seven cents, making the same deductions and additions as in the other computation. This computation came to $1,764.

The defendant claimed that the damages, if any, could only be the difference between the contract price and market price at New York. No evidence, however, was given of the market price at New York, or that there was any market price for the article there.

The jury adopted, in their verdict, exactly the amount of the plaintiff's first computation.    The defendant appeals.

*Stephen P. Nash*, for the appellant, insisted that the plaintiff having accepted the bullets at New York, at the express and freight offices, and sent them forward himself, was estopped from complaining of their quality, and cited *Reed* v. *Randall* (29 N. Y., 358); *Hargons* v. *Stone* (1 Seld., 73). Upon the point that evidence of the market value of perfect bullets in Ohio was improperly admitted, he cited *Ernest* v. *Fiedler* (1 E. D. Smith, 463); 2 Kern., 40; *Havemeyer* v. *Cunningham* (35 Barbour, 515); *Davis* v. *Shields* (24 Wend., 322). That plaintiff's collateral contract with the State of Ohio furnished no proper guide to the damages, he cited *Story* v. *Harlem R. R.* (2 Seld., 85); *Masterton* v. *City of Brooklyn* (7 Hill, 61).    The evidence of what the bullets brought in Columbus, sold by the plaintiff as old lead, was erroneously received. (*Pollen* v. *Le Roy*, 30 N. Y., 549; *Crooks* v. *Moore*, 1 Sandf., 297.)

*Samuel Hand*, for the respondent, insisted that the damages given by the jury were proper, it appearing that the defendant contracted with knowledge of and with reference to the plaintiff's contract with the State of Ohio, and to enable him to carry it out, and cited upon this point *Berries* v. *Hutchinson* (18 C. B., N. S., 445); *Passenger* v. *Thorburn* (34 N. Y., 634); *Randall* v. *Roper* (Ell. Bl. and Ellis, Q. B., 82); *Griffin* v. *Colver* (16 N. Y., 489); *Lock* v. *Furse* (Law Rep., 1 Com. Pleas, 441; 9 Exch., 341; 8 C.B., 20; Ell. and Ell., Q. B., 600; 2 Man. and Gr., 279; 8 T. R., 535; 21 Ill., 181).

The contract was not wholly in writing, and being for the manufacture of goods need not have been. (28 Barb., 38; 26 Barb., 138; 19 Barb., 455.)    The only writing shown was an *answer* to a *verbal* order.    The order, and how it was given, was properly shown by parol.

That the evidence as to the price of perfect bullets was admissible, he cited *Bell* v. *Cunningham* (3 Peters, 59);

*Converse* v. *Prettyman*, (2 Minn., 229); *Marshall* v. *Central R. R.* (45 Barb., 502).

MASON, J.    It is not necessary to decide, in this case, whether the plaintiff was entitled, upon the evidence, to recover the value of these bullets upon the market price in Ohio, as shown by the evidence, or whether the court erred in admitting the evidence to show the value of such bullets there, as the verdict of the jury shows that no such rule of damages was adopted by the jury in giving this verdict. They simply allowed to the plaintiff the profits which he would have made had the contract been fulfilled, to wit: Three-fourths of a cent per pound, and the express charges and storage on what was sent.    The plaintiff submitted two statements: One made upon the basis that he was entitled to recover just the difference between the purchase price and the price at which he had contracted for their re-sale to the State of Ohio, with the express charges which he had paid on those sent, which were refused because of their inferior quality; the other was the difference between the seven cents per pound and the nine cents, which the evidence showed them worth in Ohio.    These statements were all carried out in items and figures, the first statement making the plaintiff's claim for damages $1,128.50, and the second $1,949.22, and the verdict of the jury was $1,128.50; showing conclusively that they adopted the first statement without computation, and gave the plaintiff, as damages, no more than the profits he would have made had the contract been fulfilled, and what he paid out for express charges on those sent which were refused.    The defendants claim and insist, however, that this collateral contract of the plaintiff with the State of Ohio was improperly allowed in evidence and could not be allowed as the basis of damages between these parties; that in short the plaintiff can only recover the difference between the contract price and the market value in the city of New York where the contract of sale was made, and where the property was to be delivered under the contract.

The general rule of damages, ordinarily, is the difference between the contract price and the market value of the article at the time and place of delivery fixed by the contract. This is not the invariable rule in all cases. The general rule is, that the party injured by a breach of a contract, is entitled to recover all his damages, including gains prevented as well as losses sustained, provided they are certain, and such as might naturally be expected to follow the breach. In commodities commonly purchasable in the market, it is safe to say that the purchaser is made whole, when he is allowed to recover the difference between the contract price and the value of the article in the market at the time and place of delivery; because he can supply himself with this article by going into the market and making his purchase at such price, and these are all the damages he is ordinarily entitled to recover, for nothing beyond this is within the contemplation of the parties when they entered into the contract.

This rule, however, is changed when the vendor knows that the purchaser has an existing contract for a re-sale at an advanced price, and that the purchase is made to fulfill such contract, and the vendor agrees to supply the article to enable him to fulfill the same, because those profits which would accrue to the purchaser upon fulfilling the contract of re-sale, may justly be said to have entered into the contemplation of the parties in making the contract. (*Griffin* v. *Colver*, 16 N. Y. R., 493.) This rule is based upon reason and good sense, and is in strict accordance with the plainest principles of justice. It affirms nothing more than that where a party sustains a loss by reason of a breach of a contract, he shall, so far as money can do it, be placed in the same situation with respect to damages, as if the contract had been performed.

It was clearly competent for the plaintiff to show that the defendants were informed of the object of the plaintiff in making this contract of purchase of them, and that it was to fulfill an existing contract of his own with the State of Ohio at a price of three-fourths of one cent per pound, above the

price he was to pay them, and that they were to manufacture these bullets to enable him to fulfill such contract, because it showed that these profits to this plaintiff were in the contemplation of the parties in entering into this contract, and as the evidence showed such to be the fact, these profits that would have accrued to the plaintiff had the contract been performed by the defendants are in no sense speculative or uncertain profits.    The result of a non-performance is a practical and certain loss to the plaintiff to that extent, unless the plaintiff could have supplied himself by going into the market, and making a purchase to fulfill his contract, which, at that particular time, it is pretty evident, he could not do, as lead went up, after the making of this contract, rapidly, and bullets were sold in Ohio for nine cents in a month after the making of this contract; and the plaintiff testified that he was offered nine cents for a good Minie bullet by two or three different persons, and that Woods offered him that for 100,000 lbs., if delivered within ten days.    This was in July and August, only a month or two after this contract was entered into, and the demand became so great that lead went up five to six cents a pound.    The evidence fails to show that these bullets were sacrificed in the sale of them by the plaintiff; on the contrary, the evidence is they were sold for all they were worth.  (See case, fols. 82 and 46.)    This case does not fall within the principle of *Reed* v. *Randall* (29 N. Y. R., 358), as the plaintiff never had an opportunity to examine the bullets and no inspection was ever made of them by the plaintiff, or any one in his behalf.    They were put up in bags and kegs by the defendants and actually shipped by them in their own name, and the contract itself required them to deliver them to such lines of transportation as the plaintiff should direct, and evidently the plaintiff had no opportunity to examine them and therefore cannot be held to have made such an acceptance as to deprive him of his action.

The plaintiff had the right to sell these bullets at the best price he could obtain for them, after his offer to return them, and the defendants' refusal to receive them ; and the law did

not require him to give notice to the defendants of the time and place of sale. (*Pollen & Colgate* v. *Le Roy & Smith*, 30 N. Y. R., 549.) This is not very material, however, as the evidence is they were sold for all they were worth.

There was no error committed in allowing the plaintiff to recover what he paid out for transportation, on these bullets. By his contract with the State of Ohio, the State were to pay these expenses of transportation, and as they refused to receive them because of their defects, the plaintiff has sustained this loss, and the defendants cannot complain of this, when they accepted his order and actually shipped them by express themselves.

The judgment should be affirmed.

DANIELS, J. By the terms of the contract made by the defendant, it agreed to fill an order, previously received by the plaintiff for the bullets, from the authorities of the State of Ohio. When the bullets were delivered, it was provided by the defendant's contract, that it should be done at the city of New York, on board such lines as the plaintiff should direct to receive them. And the order referred to in the contract, directed them to be sent to Columbus, in the State of Ohio, by express. The right given to the plaintiff of directing what lines should receive the bullets from the defendant, as well as the direction explicitly given by the order, the defendant, by its contract, undertook to fill, conferred upon the plaintiff the authority to require that they should be carried and transported in that manner, from New York to Columbus. And the delivery of the bullets without objection, to the express company, by the defendant, indicated its conviction to be that the plaintiff had properly exercised the authority which the agreement had for that purpose, by clear implication, conferred upon him.

The agreement did not require that the bullets should be inspected, examined or accepted by the plaintiff at the city of New York. It must therefore have been intended that the plaintiff should be secured the opportunity of doing that

after their arrival at Columbus. That was a right the plaintiff, as the vendee of the property, had, by law, and the only qualification attending it was, that it should be made available within a reasonable time after the opportunity for doing it was afforded to him. As it was not contemplated by anything contained in the agreement that this should be done before the bullets were delivered to the carrier, and as no opportunity could be presented for doing it afterwards, until they arrived and were delivered at the point for which they were destined, it follows that the plaintiff had the right to reject them upon their arrival at Columbus, when it was ascertained that they failed to conform to the terms of the defendant's agreement. (*Reed* v. *Randall*, 29 N. Y., 358.) This right was not extinguished by a mere formal delivery of the bullets. It continued until the plaintiff could examine and inspect them for the purpose of determining whether they corresponded to the bullets he had a right to insist upon having, under the terms of the defendant's agreement. And for that reason, the expenses of their transportation to Columbus was one of the risks assumed by the defendant. For the loss of such expenses, depended entirely upon the circumstances of the performance of the contract by the defendant. It was necessarily incurred before it could be properly ascertained whether the defendant had, or had not, performed the obligation it had entered into. And when it was discovered that it had failed to do that, the loss of those expenses had occurred. This loss, therefore, necessarily arose out of the defendant's failure to perform its contract, and for that reason it was properly chargeable to it as a direct and legitimate item of damages.

As these bullets were not designed for the New York market, but for transportation to and sale at Columbus, their value at that place constituted a proper subject for consideration upon the question of damages. If the plaintiff had not, by the terms of the order to him, been entitled to much less than that, the difference between the contract price and the market value at Columbus would have formed the measure

of compensation due to the plaintiff on account of the defendant's failure to perform the contract. (*Bridge* v. *Wain*, 1 Starkie, 410; *Hargous* v. *Ablon*, 5 Hill, 472, 474.) But by the terms of the order received by the plaintiff from the State authorities, he was entitled, by way of profit upon the transaction, to much less than that; and that profit added to the expenses necessarily paid by the plaintiff was the loss sustained by him in consequence of the defendant's failure to perform its agreement.    As he was entitled to recover no more than an indemnity from the defendant, this, therefore, formed the measure of the damages which was due to him in the action; and that he recovered, by the verdict of the jury, after deducting from the amount the sum he had received from the sale which was made of the bullets when it was discovered that they were not such as were required by the terms of the defendant's contract.

When the plaintiff found that the bullets were not such as he was entitled to receive, and notice was given of that fact and of their rejection on that account to the defendant, he held them as the bailee of the latter, subject to its order and direction, and as such he could not lawfully conclude the defendant by a sale of them; but as he sold them for what was proven to be their full value, and the defendant availed itself of the result of the sale by having the balance over the expenses realized from it deducted from the amount the plaintiff would otherwise have recovered by the verdict, it has no reason for complaining that the sale itself was wrongful or made without its authority.    It has had the full value of its property as much so as if the property had been returned in specie to it, or the money itself had been received for it.

The verdict and the judgment upon it were clearly right, and the judgment, therefore, should be affirmed.

Hunt, Ch. J., Woodruff, Grover, James and Lott were for affirmance on the ground stated in the opinion of Mason, J.

Judgment affirmed.