### DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

#### OF THE

## STATE OF NEW JERSEY,

## AT NOVEMBER TERM, 1875.

---

### WOLCOTT, JOHNSON & CO., PLAINTIFFS IN ERROR, v. LEWIS D. MOUNT.

1. A statement made in good faith at the time of sale, by the vendor, that seed is of a certain kind, such seed, with respect to kind, not being ascertainable by inspection, will lay a ground from which a jury, or a court having power to pass upon facts, may infer a warranty as to kind.
2. Where seed are warranted as to kind, and the vendor knows the use to be made of the seed, he is answerable for the difference between the value of the product of the seed sold, it being put to the use specified, and the value of the product that would have resulted had the seed corresponded to the warranty.

---

On error to the Supreme Court.

For proceedings in this case and opinion of the court below, see 7 *Vroom* 262.

For the plaintiffs in error, *Henry G. Clayton.*

For the defendant, *Joel Parker.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The plaintiffs in error sold to the defendant in error certain seed as and for " early strap-leaf red-top turnip seed." The seed, being planted, turned out to be of a different kind, so that the defendant lost his crop. It was shown in the case that the plaintiffs in error believed, at the time of the sale, that the seed was of the kind which the defendant sought to purchase. The defendant in error brought his suit before a justice, on the ground that the sale to him, under these conditions, comprised a warranty. The decision was in his favor, and such judgment was affirmed in the Common Pleas, and, on *certiorari*, in the Supreme Court.

Therefore, the point before this court now is, whether, on the facts stated, the Court of Common Pleas could lawfully infer that the plaintiffs in error warranted the article sold to be of the particular kind for which it was purchased.

The subject of warranty, in its application to the class of cases in which the present one is comprehended, has been involved in much confusion. The authorities are not consistent, and they are very numerous. It has always seemed to me that a considerable part of this contrariety has arisen from a misapprehension with respect to what was decided in the famous case of *Chandelor* v. *Lopus, Cro. Jac.* 4. The only question in that case, as I understand it, was, as to the sufficiency of the averments in the declaration. The plaintiff's case appearing upon the record, is stated in the report in these words, viz. : " Whereas, the defendant being a goldsmith, and having skill in jewels and precious stones, had a stone which he affirmed to Lopus to be a bezoar stone, and sold it to him for a hundred pounds ; *ubi revera*, it was not a bezoar stone." The contention in the court of error, upon this record, was, that enough did not here appear to charge the defendant, because it was shown neither that he warranted it to be a bezoar stone, nor knew it to be such. Instead of a warranty being expressly laid in the declaration, a mere affirmation as to the kind of article sold, was laid, and it was this form of plead-

ing which was adjudged to be bad. Now, an affirmation of this kind may or may not be a warranty, according to circumstances, and the fault of the pleading, therefore, was, that instead of a warranty, it set forth inconclusive evidence of a warranty. The pleader was bound to state the transaction according to its legal effect, and this was all that was decided. And such a form of statement, at the present day, would, I think, be deemed ill.

But this decision has been many times cited, not as an illustration of the rule of pleading, but as an example of the insufficiency of the affirmation specified in the case to prove a contract of warranty; and this, in my opinion, is an evident misuse of the precedent, which has been introductive of confusion. It was such abuse that resulted in the judgment in *Seixas* v. *Woods*, 2 *Caines' R.* 48, which asserted that a warranty would not arise from a description of the kind of the article sold. This decision was followed by several others in a similar vein; but the ground upon which this line of cases rested, after being much criticised and discredited, has been formally repudiated by the Court of Appeals of New York, in *Hawkins* v. *Pemberton*, 51 *N. Y.* 198.

The tendency of recent adjudications has been, I think, to put this subject on a reasonable footing. Starting from the admission that, in the absence of fraud and of a warranty, the rule of *caveat emptor* applies, the effort is, not to elevate particular expressions contained in a given contract into a general rule of law, but to regard each case in the light of its own circumstances, and with respect solely to the understanding of the parties. Whether the representation or affirmation accompanying a sale shall be regarded as a warranty or as *simplex commendatio*, is a question to be solved by a search for the intention of the contracting parties. The two cases of *Jendwine* v. *Slade*, 2 *Espinasse* 572; and *Power* v. *Barham*, 4 *A. & E.* 473, are conspicuous examples of this rule. In the former there was a sale shown of two pictures, the catalogue of the auction, describing one as a sea piece, by Claude Lorraine; and the other, a fair, by Teniers. This descrip-

tion was held by Lord Kenyon to be no warranty that the pictures were the genuine works of the artists referred to, but merely an expression of the opinion of the vendor to that effect. In the other case, it appeared that, at a sale of four pictures, they were described as "four pictures, views in Venice—Carnaletti," and it was left to the jury to decide whether the intention was to warrant the pictures as authentic, the court distinguishing this case from the former one by the circumstance that Carnaletti was comparatively a modern painter, the authenticity of whose works was capable of being known as a fact, while, with respect to the productions of very old painters, an assertion as to their genuineness was necessarily a matter of opinion. In these instances the respective affirmations of the vendor were of equivalent import, intrinsically considered; but it was left open, as a matter of inference, whether they were to have the same signification when used under variant circumstances. The question consequently is, in every case of this kind, whether the conditions were such that the vendee had the right to understand, and did so understand, that an affirmation or representation made by the vendor was meant as a warranty.

And for the determination of this question, Mr. Benjamin, in his admirable Treatise on Sales, page 499, says: "A decisive test is whether the vendor assumes to assert a *fact* of which the buyer is ignorant, or merely states an opinion or judgment upon a matter of which the vendor has no special knowledge, and on which the buyer may be expected also to have an opinion, and to exercise his judgment. In the former case there is a warranty; in the latter, not."

This criterion is the product of the learned author's study of the English decisions, and it appears to me to be the most satisfactory one which can be adopted. It is exemplified in a vast number of cases, many of which are collected in the treatise just referred to, and in the voluminous notes upon the case of *Chandelor* v. *Lopus*, 1 *Smith's Lead. Cas.* 238. It does not seem to me expedient further to refer, on this point, to the books, contenting myself with the single obser-

vation that the before-cited case of *Hawkins* v. *Pemberton*, 51 *N. Y.* 198, is in all respects applicable to the facts now present.

Resorting, then, to the principle and test just propounded, it is manifest that the judgment of the Supreme Court cannot be disturbed.   The Court of Common Pleas, in weighing the evidence, had a right to infer that a warranty of the character of the article sold was within the understanding of the contracting parties.   The seller in this case asserted, at the time of the sale, that the seed was of the species which the vendee was in search of.   When he made this express assertion, he was aware that the vendee could have no opinion for himself on the subject, for the case states that the seed could not be distinguished by sight or touch.   The vendee also knew that the vendor could not be stating the result of his own observation.   The facts do not admit of the imperative inference that the assertion of the vendor was mere commendation of his goods, or even that it was the utterance of his view as an expert.   If the seller had stated the exact truth, he would have said that he had bought the seed as seed of the specified kind, but that he did not know whether it was so or not. Instead of doing this, he made the positive assertion in question.   From such an assertion, under the circumstances in evidence, I think the court, although it was not bound so to do, had the right to infer that there was a warranty.

The second question raised in the cause respects the measure of damages.   The rule applied in the court below made the plaintiff whole, as he was allowed to recover the difference between the value of the crop produced and the crop which would have been produced if the seed had been answerable to the warranty.   This embraces profits, and the contention was, that profits are too remote and uncertain to constitute an ingredient in the recompense which the law gives on a breach of contract.

But this argument comprises a latitudinarian and incorrect statement of the legal rule.   Profits sometimes are not, in a legal point of view, either remote or uncertain.   Where the situation of the parties is such that, supposing their attention

to have been directed to the contingency, they must have perceived, at the time of the making of the contract, that its breach would probably result in the loss of definite profits, such profits being of an ascertainable nature, the compensation which the law affords to the injured party will embrace these profits. The leading case on this subject, and one which was approved of in this court in *Binninger* v. *Crater*, 4 *Vroom* 513, is that of *Hadley* v. *Baxendale*, 9 *Exchq. R.* 341. The action was for the non-performance of a contract, and the rule is thus defined by the court: " We think the proper rule in such a case as the present is this: where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract, should be either such as may fairly and substantially be considered as arising naturally—*i. e.*, according to the usual course of things—from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from the breach of such contract which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated."

The rule thus stated has been approved of and followed in a numerous series of decisions by both the English and American courts, as is abundantly shown by Mr. Sedgwick in his valuable work on Damages, page 79, (sixth edition.)

The present case falls clearly within the scope of this principle. The defendant at the time of the sale was possessed of all the facts—he knew the business of the plaintiff, and the use to be made of the thing sold. He was in a situation to foresee, with entire certainty, the loss that would fall upon the plaintiff if the warranty should be broken. Nor are the gains which have been lost subject to any uncertainty. The

Young v. Del., Lack. and West. R. R. Co.

seed sold was planted and came to maturity; the seed stipulated for would have done the same, only the value of the product would have been, to a definite amount, greater. In such an injury there is nothing speculative or contingent. There are a number of authorities which sanction the recovery of profits of a much more uncertain character than these. *Davis* v. *Talcot,* 14 *Barb.* 611; *Griffin* v. *Colver,* 16 *N. Y.* 489; *Borries* v. *Hutchinson,* 18 *C. B.* (*N. S.*) 445; *Messmore* v. *N. Y. Shot and Lead Co.,* 40 *N. Y.* 422.

The judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, REED, SCUDDER, VAN SYCKEL, WOODHULL, CLEMENT, DODD, GREEN, LILLY—10.

*For reversal*—DIXON, KNAPP—2.