## MANUFACTURERS' & TRADERS' BANK *v.* C. W. F. DARE Co. *et al.*

(*Supreme Court, General Term, First Department.*   October 16, 1891.)

INJUNCTION—BOND—ASSESSMENT OF DAMAGES.

On a reference to ascertain the damages caused by an injunction suspending defendant's business of manufacturing toys, the referee allowed damages sustained by loss of profits based on testimony that the profits of the business, over and above its expenses, are 25 per cent., and that during the life of the injunction defendant was prevented from doing a certain amount of work in gross, or orders received, but made no allowance for contingencies of business, certainty of sales, and bad and uncollectible debts. It appeared that the company which had theretofore run the business had not paid any dividends for years, and had become insolvent. *Held*, that the assessment of damages should be set aside.

Appeal from special term, New York county.

Action by the Manufacturers' & Traders' Bank against the C. W. F. Dare Company, C. W. F. Dare, and Abram Folk. From an order overruling exceptions, and confirming the report of the referee, made on a reference to assess damages sustained by defendants by the issuing of an injunction, plaintiff appeals.

---

[1] Code Civil Proc. N. Y. § 1670.

Argued before VAN BRUNT, P. J., and DANIELS, J.

*Rogers, Locke & Milburn*, for appellant.  *L. A. Gould*, for respondents.

DANIELS, J.  The injunction was issued on the 3d of December, 1887, in an action brought by the plaintiff, as a judgment creditor, whose execution had been returned unsatisfied, to set aside the sale of the property of the C. W. F. Dare Company, which had been made upon executions issued upon judgments recovered against the company, and the purchase of the property sold to the defendant Abram Folk.  The action proceeded to trial against the company and C. W. F. Dare, and resulted in a judgment in favor of these two defendants.  No trial was had of the issue framed between the plaintiff and the defendant Abram Folk; but, after the trial of the action as to the other two defendants, a motion was made in his behalf to dismiss the suit for want of prosecution, and that resulted in an order and judgment to that effect.  But neither the order made in this manner, nor the judgment, in any form adjudged or determined that the plaintiff was not entitled to the injunction.  After the judgment was entered, a motion was made for a reference to ascertain the damages sustained by the defendant Abram Folk by reason of the injunction.  This injunction was served upon him soon after it was issued, and remained in force until the 23d of the following January, a period of nearly six weeks.  The business which the injunction affected was the manufacture of toys, hobby-horses, wagons, sleighs, rockers, chairs, and velocipedes.  It had been carried on by the corporation, as the first witness early in his examination stated, for the period of 12 years; and by force of the injunction it was wholly suspended between the time when it was issued and its discharge, by virtue of a bond given under the provisions of the Code on behalf of the defendant Folk.  It did not interfere with the operations of the company, or of C. W. F. Dare, beyond the performance of his services as the agent or superintendent of Folk; and for that reason neither the company nor Dare sustained any damages or loss by reason of the injunction, but whatever loss was occasioned by it resulted to Folk, in whose behalf the business was carried on.  The premises devoted to the business were leased, and the rent paid during the operation and effect of the injunction; and for that the referee allowed in his report the sum of $208.33.  And to that allowance there seems to be no very substantial ground of objection, if the case is one in which any damages can be regularly assessed.  He also allowed for the expenses of a day watchman to watch the property the sum of $12 a week, and for the keeping of a horse the sum of $20.  And it appeared by the evidence that at the time the injunction was served orders had been received for the manufacture of articles such as were made and sold in the business, amounting to the sum of $4,275.55, for which the referee allowed 25 per cent., or one quarter, as lost profits.  And he allowed the further sum of $150 for the expenses of counsel in making the application to discharge the injunction on the giving of the bond, and attending upon this reference, and preparing a brief or argument upon the testimony, and submitting the report of the referee to the court.  Exceptions were filed to the conclusions of the referee, and particularly to his final conclusion, that the defendant Folk had sustained damages by reason of the injunction in the sum of $1,531.55.

It has been insisted in support of the appeal that no damages could be properly assessed on account of the injunction, for the reason that there was no adjudication that the plaintiff in the action was not entitled to the injunction; and it seems to be at least doubtful whether this objection has not been well taken, notwithstanding what was said upon the subject in *Insurance Co.* v. *Roberts*, 4 Sandf. Ch. 634; *Carpenter* v. *Wright*, 4 Bosw. 655; *Cunningham* v. *White*, 45 How. Pr. 486; and *Mail, etc., Co.* v. *Toel*, 85 N. Y. 647; for in *Palmer* v. *Foley*, 71 N. Y. 106, and *Benedict* v. *Benedict*, 76 N. Y. 600, the court seems to have been of the opinion that such an adjudication was essen-

tial to form the foundation for a claim for damages resulting from the issuing of an injunction. While there was no such adjudication, either in theory or effect, in the dismissal of this action for the want of prosecution, it did not result from that dismissal that the injunction had been improperly or illegally issued, but the disposition made of the case in favor of Folk was solely because it had not been diligently prosecuted. The case of *Mail, etc., Co.* v. *Toel, supra,* is not in conflict with these two authorities, for the reason that the order there in fact vacated the injunction and discontinued the action, and that was held, in effect, to determine that the plaintiff was not entitled to the injunction; while here the injunction was no otherwise discharged than by the defendant giving the security which he was authorized to give for the purpose of vacating it, and the dismissal of the action in no manner referred to the fact of an injunction having been issued or disposed of. But it is not necessary for the present disposition of the appeal to determine whether this dismissal of the action may, by any force of construction, be held to adjudge that the plaintiff was not entitled to the injunction at the time when it was issued; for the damages allowed by the referee, and confirmed by the report, for the loss of profits in the busines, do not seem to be capable of being sustained. That profits may be allowed under proper circumstances was held in *Hotchkiss* v. *Platt,* 8 Hun, 46; and as a general proposition this may be considered to be the law, although the authorities bearing upon it are by no means universal or reconcilable. In *Messmore*.v. *Shot, etc., Co.,* 40 N. Y. 422, it was held that gains prevented as well as losses incurred were the proper subjects of compensation in an action for damages for the violation of a contract. But in that case the facts were of such a nature as to indicate with reasonable certainty what profits had been lost, and accordingly should be awarded to the party not in default under the agreement; and the decision proceeded in their allowance upon the qualification that the gains to be allowed should appear to be reasonably certain. Id. 427. And, following this principle, it was held in *Heinemann* v. *Heard,* 50 N. Y. 27, 37, that the profits must neither be speculative nor contingent to justify their allowance; and this was also considered to be the law in *Cassidy* v. *Le Fevre,* 45 N. Y. 562, and *Stamping Works* v. *Koehler,* 45 Hun, 150, where the authorities were reviewed by Presiding Justice VAN BRUNT. The principle was also considered in reference to the authorities in *Wakeman* v. *Manufacturing Co.,* 101 N. Y. 205, 4 N. E. Rep. 264, where the right to recover in an action for breach of contract for the loss of profits was sustained, but without departing from the restraint already mentioned, that they must not be either speculative or contingent. And to this effect also is the case of *Stevenson* v. *Stewart,* 9 Wkly. Dig. 352. Where they are speculative or contingent, they form no such criterion for the assessment of damages as will justify their allowance; and no more liberal principle can very well be applied to the ascertainment of the damages sustained by reason of an injunction.

In the present case two of the witnesses testified that the profits of the business, over and above its expenses, were 25 per cent.; and the referee has followed that estimate of these witnesses in making the allowances which he did by his report. But whether these profits could be realized or not must depend upon the contingencies of the business, the certainty of the sales, and the exclusion of bad or uncollectible debts. These elements all enter into the nature of profits of this description, rendering it uncertain or contingent, as to whether they would be realized or not; and it does not necessarily follow, because the profits of this business have produced this percentage in the previous years referred to by the witnesses, that the same amount of profit would have been secured in the business during this period of time if it had not been interfered with or suspended by reason of the injunction. The fact that the company did not realize these profits is abundantly evident from the nature of its business, as it seems to have turned out; for prior to the time

of the commencement of the plaintiff's action executions had been issued upon three judgments, amounting to no more than the sum of $5,074.29, upon which its property was sold, certainly so much of it as was affected by this injunction; and in the sale it realized about the sum of $3,000; and the purchaser at that sale sold it to the defendant Folk for four notes, of $250 each, which at the time of the hearing before the referee had not been paid. It also appeared that the company had made no dividends to its stockholders. It was alleged in the plaintiff's complaint that its assets amounted to between five and six thousand dollars, but this was denied by the defendants in their answers; and the probabilities accordingly were that what was sold under the executions was in value less than the sum of $5,000; and as the company, in the course of its business, had made no dividends, it is entirely evident that this fact or measure of profit was not in reality secured by it upon the disposition of its manufactured articles. Why the company became insolvent and failed was not made to appear, but the fact is in the case that such was the result; and, added to the other circumstance that it made no dividends, they indicate the truth to be that this nominal rate of profit mentioned by these witnesses was not in fact realized out of the sales of the company's manufactures. These facts do not appear to have been considered by the referee in reaching the estimate made by him of the profits of this business, but he proceeded upon the general statements of these witnesses that the net profits did amount to the sum of 25 per cent.; while from the other circumstances it is entirely evident that the company never realized such a line of profit as the result of its business; for, if it did, it would not have been in the condition in which it was found by the executions in the fall of the year 1887; neither would it have been disabled from making dividends to its stockholders. These facts indicate that in the course of the business, even if it had remained unobstructed by the injunction, there was no certainty that this line of profits would have been produced. But if reference is to be had to the result of the business in preceding years, the probability is disclosed that they were greatly diminished, if not consumed, by the losses, to a greater or less extent, always incurred in business transactions; and, in addition to that, it appears that the same stock was finished up at the close of the next year, and sold in the course of this business. Some additional expense was incurred in this finishing of the articles, but nothing like this range of 25 per cent. The improbability of the allowance being justified by the circumstances is also increased by the fact that it exceeds the whole amount for which Folk gave his notes for the property, neither of which at the time of the hearing had been paid, and approximates nearly half the amount which was realized by the sale of the property under the executions. The allowance of these profits was not justified under the evidence produced upon the hearing; and the conclusion of the referee that Folk had sustained damages to the sum finally mentioned by him was therefore unwarranted, and the exception to that conclusion is well founded. The order should be reversed, and the report set aside, with $10 costs, and the disbursements, and another referee should be appointed to make the assessment.