REICH v. COLWELL LEAD CO.

(Supreme Court, General Term, First Department.    December 16, 1892.)

1. MEASURE OF DAMAGES—DELAY IN COMPLETING BUILDING.

In an action for special damages for a delay in the completion of an apartment house, caused by the refusal of defendant to deliver plumbing materials at the specified time, the measure of plaintiff's damages is the difference between the reasonable income from the building during the delay and the amount paid by plaintiff for rent, taxes, interest, maintenance, and attendance during the same period.

2. SAME—EVIDENCE.

The reasonable rental value of a building, during the time its completion was delayed, cannot be shown by the rent received from the building nearly four years after its completion.    Scribner v. Jacobs, (Sup.) 9 N. Y. Supp. 856, followed.

**3. UNLIQUIDATED DAMAGES—INTEREST.**
  The damages resulting from the noncompletion of a building at the time specified, by reason of the nondelivery of material, are unliquidated and uncertain, which the defendant had no means of computing, and it was error to allow interest upon the award. Mansfield v. Railroad Co., 21 N. E. Rep. 735, 114 N. Y. 331, followed.

Appeal from judgment on report of referee.

Action by Lorenz Reich against the Colwell Lead Company to recover damages for a breach of contract. From a judgment for plaintiff, entered upon report of referee, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.

Tracy, Boardman & Platt, for appellant.

Abram R. Kling, for respondent.

BARRETT, J. This action is for damages which the plaintiff claims to have sustained because of the defendant's failure to furnish certain plumbing materials for an apartment house, which plaintiff was building at the corner of Thirty-Second street and Fifth avenue, in this city. Two causes of action are set forth in the complaint,—one for failure to deliver all the materials for which the plaintiff paid; the other for special damages for delay in delivering the materials. It is with the latter alone that we now have to deal, as the referee's conclusions upon the former head are not questioned upon this appeal. The evidence fully justified the referee's finding with regard to the defendant's delay in delivering the materials under the contract; and his general conclusion, that the plaintiff is entitled to such damages as were actually sustained by reason of the delay, is supported by the cases of Ruff v. Rinaldo, 55 N. Y. 664, and Scribner v. Jacobs, (Sup.) 9 N. Y. Supp. 856. These materials were repeatedly demanded, and complaints of delay repeatedly made, but the defendant continued neglectful to the end; nay, more, it refused to deliver materials for which the plaintiff had actually paid in advance under the contract, because other materials not embraced within the contract had not been paid for. The difficulty, however, is with regard to the proof of damages. The rule laid down in the cases cited supra entitled the plaintiff to the value of the use of the building while he was deprived thereof in consequence of the delay. In the present case the value of such use, consisted, as was said by Daniels, J., in Scribner v. Jacobs, supra, "of what would have been the reasonable rental of the building for the time during which the delay was in this manner caused." From this, however, should be deducted the rental paid by the plaintiff for the same period, together with his probable outlay for keeping the building up and furnishing proper attendance. The proof was entirely insufficient on this head. It was confined to the plaintiff's testimony to the effect that the rental value of the building for the year 1887—that is, what it cost him—was about $51,000, and that he lost for four months of that year three tenants, who had agreed to pay him, in the aggregate, $11,850 per annum. There was nothing in this to show that in case the building had been ready for occupancy at the time specified—namely, May 1, 1887—the plaintiff could have obtained therefor a larger rental during the four suc-

ceeding months — that is, down to October 1, 1887, when the building was ready for occupation—than the proper proportionate part of the $51,000 which constituted his running outlay for the year. This latter sum was the rental value of the property for the year 1887, according to the plaintiff's own testimony; that is, it was the actual amount which he paid for rent, taxes, and interest on his capital. It is true that the plaintiff also testified that the present rental value of the building was about $10,000, and that his receipts in June, 1891, (when the case was on trial,) for rent paid by his tenants, amounted to about $800 a day; but this testimony was clearly incompetent, and the exception to its admission was well taken. This exception appears at folios 110 and 111 of the case, as follows:

"Question. Do you know what the rental value per day is of your hotel when occupied? (Objected to as immaterial, irrelevant, and incompetent, and as no proof of any damage against the defendant. Objection overruled. Exception.) Answer. Yes, sir. The rental outside of the table amounts to about $800 a day; that is, estimating the receipts from the rooms."

It was expressly held in Scribner v. Jacobs, supra, that proof should be confined to the period of the delay, and that it was error to estimate the loss of rent by the rental value of the building months later. Because of the lack of proper evidence to establish the consequential damages, and because of this admission of incompetent testimony, it is impossible to sustain the referee's report. There are other questions of a serious nature, but, as they may not arise upon a new trial, we need not now consider them all. We should say, however, that it was error to allow interest upon the damages awarded. These damages were clearly unliquidated, and certainly the defendant had no means of ascertaining by computation or otherwise the amount to which the plaintiff was entitled. Mansfield v. Railroad Co., 114 N. Y. 331, 21 N. E. Rep. 735. We may add that, as the only ground upon which plaintiff can be entitled to recover is that the delay in furnishing the materials prevented the completion of the building at the specified time, it was competent for the defendant to show that noncompletion resulted from other causes than its delay. If, in truth, such delay had no actual relation to the failure to complete the building until the 1st of October, the defendant cannot be held for special or consequential damages which it did not cause. One Archer testified that he did the mason work and plastering on the building, and that he finished such work, as he thought, in August, 1887. We think he should have been permitted to answer the questions put to him at folios 253 and 254 of the case as to whether he met with delays in his work, and whether he could have finished such work any sooner than he did. This bore upon the question whether the defendant's delay was material, and whether, apart from its delay, the building could have been ready for occupancy and rental during the period for which damages are claimed against them. The judgment should therefore be reversed, and a new trial ordered before another referee, to be appointed by this court, with costs to appellant to abide the event. All concur.