## In re WATERTOWN CONCRETE STONE CO.

(District Court, N. D. New York. September 7, 1911.)

CONTRACTS (§ 319*)—CONSTRUCTION AND OPERATION—CONTRACT TO FURNISH MATERIAL FOR BUILDING—PART PERFORMANCE.

Bankrupt contracted to furnish to claimant concrete blocks for the completion of a house and veranda for the price of $900, of which $500 was to be paid when material for the house proper was delivered, and $400 on delivery of that for the veranda. The contract further provided that the two deliveries should be made by times fixed, and that bankrupt should pay $10 per day for any delay thereafter. Some time after the time so fixed, it delivered the greater part of the material for the building proper, which was accepted and used; the remainder, of the value of $115, not being delivered at all. It also, after the time fixed, delivered material for the veranda, which was not in compliance with the contract and was properly rejected. *Held,* that the delivery of material of the value of $585 only did not constitute a substantial performance of the contract as an entirety, but, as the contract was by its terms made divisible, it might be considered a substantial performance of that part relating to the building proper and entitled bankrupt to recover $500, less claimant's damages for delay and for failure to make full delivery; that, accepting the provision for $10 per day as furnishing the proper rule of damages for the delay, claimant was entitled to a deduction from the $500 of such amount. and $115 for the material not delivered, and that, as to the veranda, there was no performance and nothing became due the bankrupt, but claimant was entitled to recover the stipulated per diem damages, at least until the delivery of the rejected material.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1493–1507; Dec. Dig. § 319.*]

In the matter of the Watertown Concrete Stone Company, bankrupt. On review of order of referee disallowing in part the claim of Peter A. Ward for damages for breach of contract, and finding that he owed the bankrupt $110 on the contract. Reversed.

Pitcher & O'Brien, for claimant Ward.·

John Conboy, for trustee and Wingate Concrete Machine Company.

RAY, District Judge. The Watertown Concrete Stone Company was adjudicated a bankrupt on the 12th day of March, 1906. Prior and up to that time it had been engaged in the business of making and furnishing or selling concrete blocks for building purposes. In the spring of 1905 the claimant, Peter A. Ward, made plans and specifications for the erection of a wooden house on his premises in the city of Watertown, prepared by one D. D. Kieff. Thereafter George E. Card, representing the Watertown Concrete Stone Company, hereafter called the "bankrupt," had conversations with Mr. Ward respecting the substitution of concrete stone blocks, and made a written proposition to furnish same, which was accepted in writing. A formal contract was drawn, signed, and submitted by Ward, which the bankrupt declined to execute. This varied in some respects from the letters referred to. By June 29, 1905, most of the concrete blocks had been placed on the premises of Ward, and some of these were

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

used. In September, 1905, Ward notified the bankrupt that the blocks, etc., were not satisfactory or according to contract, and that he would not accept or pay for same, and demanded that the blocks be removed. On September 18, 1905, the bankrupt made a proposition to furnish cement stone to take the place of stone off color. At that time the foundation walls of the house had been erected so far as the water table, and some few blocks had been laid above that line.

On the 20th day of September, 1905, the bankrupt and Ward entered into a formal written agreement whereby:

(1) The bankrupt was to furnish and deliver on the ground all the concrete blocks necessary to complete the house to the roof, including cornice, caps, and sills for windows and doors as per plan, and complete the 8-inch blocks, railings, spindles, posts, and cornice for piazzas and steps as per plans, and also concrete chimney blocks for rear chimney from cellar to top of chimney and for other chimneys from roof up, as shown in plans.

Also (2):

"It is further understood and agreed that the contractor is to furnish all the concrete material necessary to complete house on or before the 5th day of October, 1905, except cornice, spindles, railing, and posts for piazzas which is to be done by November 5, 1905. On failure to furnish same by the said 5th day of October, 1905, and 5th day of November, 1905, the contractor hereby agrees to pay to the owner ten dollars ($10.00) a day as agreed upon by the parties hereto as liquidated damages, and not as penalty, for each day after said October 5, 1905, and November 5, 1905, that contract shall remain unfulfilled. The caps for front and side of house are to be as near color of sills as it is possible to make the same. It is hereby further understood and agreed that all concrete material furnished for front and cornice shall be of an even color, such color to be a shade between two colors chosen and agreed upon by the parties hereto, samples of the minimum and maximum in color to be in the hands of each of the parties. It is further agreed by party of the first part to furnish material for verandas as near the color of blocks as possible."

And as to payments the contract provided:

"Payments to be made as follows: Five hundred dollars when material is delivered for house and balance of four hundred dollars to be paid on delivery of material for verandas. It is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the contractor for said material and work shall be eleven hundred dollars ($1100), subject to a deduction of two hundred dollars heretofore paid for material already furnished and used by owner, leaving a balance of nine hundred dollars ($900) due contractor upon fulfillment of within contract. In witness whereof, the parties to these presents have hereunto set their hands and seals, the day and year first above written."

From the last clause it is evident that $200 of the $1,100 was payment for the material furnished, accepted, and used prior to the making of this last agreement, and it is also evident that this new agreement took the place of all former agreements and operated as a settlement of all prior and existing differences.

It appears from the evidence and findings of the referee that the concrete blocks for the house aside from the material for piazzas was not furnished by October 5, 1905, and that some of it was never furnished, but that the most of it was placed on the ground by October 31, 1905. This was 22 days after it should have been delivered. The

concrete material so far as furnished by the bankrupt for the front piazza, consisting of porch rails, columns, and spindles, was not placed on the ground until December 7, 1905, or 27 days after it should have been delivered, and, when delivered, the referee finds was not according to the contract, and was absolutely rejected and refused, and not used. Its value, if according to contract, was over $400. The referee expressly finds that the bankrupt did not furnish the concrete blocks for front steps, back steps, front door sill, side door sill, and back door sill, and that they were worth $65, and also that it failed to furnish the blocks for the chimney above the roof which were worth $50. The referee also finds:

"That the concrete materials for the piazza, when furnished, were not in accordance with the plans, viz., instead of single and upper lower rails these rails came in three (3) foot lengths. The pieces were smooth, cut off square, without dowel or socket. The spindles did not correspond with plan. They were square on each end, and tapered from top to bottom, had no O. G. or fancy turning on them. The posts were not fluted, were concave, instead of convex. No plate or cornice was delivered and no dental work. The piazza was useless to claimant, and was refused and thrown aside, and a wood piazza substituted."

This is, of course, a finding that the bankrupt utterly and wholly failed to perform the contract so far as the piazzas or verandas were concerned. The material furnished therefor was not in accordance. to contract, and it was wholly rejected. The evidence shows that the "wood piazza substituted" was furnished by Ward, and paid for by him. It follows that under the terms of the contract the "four hundred dollars to be paid· on delivery of material for verandas" never became due or payable to the bankrupt. The fact that certain material not according to contract was delivered, but rejected and never accepted or used, did not comply with the contract, or make the $400 ·due or payable. The material was not accepted, but rejected. As to the blocks for the main part of the house, they were accepted, but not in full performance of the contract. Of the $900, $300 were actually paid, leaving $600 unpaid, but of this $600, $400 never became due. · The bankrupt never became entitled to it, and Ward never became liable to pay it. The balance of $200 did become due as the blocks were accepted and used, but this was subject to the claim of Ward for damages.

The referee found, and the trustee and objecting creditor has not excepted or appealed:

"That the claimant sustained damages by reason of the stone company's failure to perform the contract, but is limited to the sum specified in the contract as liquidated damages, to wit, $10 per day, and I therefore find that claimant is entitled to offset against the balance of $600 due from him upon the contract the sum of $490, being for forty-nine (49) days of default as heretofore found, leaving a balance of $110 due from the claimant (Ward) to the bankrupt's estate."

The difficulty with this is that the referee erroneously assumed that a balance of $600 was due the bankrupt on the contract, when in fact only $200 was due. Making the proper offset and the claimant, Ward, was entitled to have his claim allowed at $290 over and above all claims of the bankrupt against him. This, too, on the assumption that

the bankrupt was entitled to the $115 for front steps, back steps, front, back, and side door sills and blocks for chimney above roof not furnished at all. Just how the bankrupt ever became entitled to recover for these the referee does not point out. Clearly the value of these went to make up the balance of $200, and should be deducted, leaving only $85 that ever became due to the bankrupt. As the claim-ant's damages are $490, and the amount due the bankrupt only $85 after deducting from the $600, the value of material not furnished at all, the claimant, Ward, is entitled to have his claim allowed at $405, the balance of his damages as found by the referee, unless we assume that the $10 per day fixed and agreed upon as liquidated dam-ages was a substitute for any delivery of material at all, and that whether material according to contract was delivered or not, or any material at all was delivered, Ward became liable to pay the $600, and could offset as damages the $10 per day up to the time the bank-rupt delivered material in pretended compliance with the contract, but which was not in compliance therewith and not accepted but re-fused, and no longer.

This is the result of the holding of the referee, as (1) the contract expressly provides that the $400 was not to be paid until the material for the piazza or veranda was delivered; and (2) the referee finds that such material as called for by the contract was never delivered, and that that delivered was not accepted, and the owner finally in the spring of 1906 substituted a wooden veranda at his own expense; and (3) he charges Ward with the $400 that was to be paid when such materials for the veranda were furnished and then only; and then finally (4) he credits Ward with the $10 per day damages up to the time the rejected material for the veranda was put on the ground and rejected. If Ward was entitled to the $10 per day for failure to deliver the material for the veranda according to the contract at all and for any length of time, he was entitled to it after as well as before the delivery of such rejected material (found not to be accord-ing to the contract), and at least down to the time Ward was able to get other material or substitute his wooden veranda. In any event, assuming the $10 per day is the correct rate of damages, and that Ward knew when the improper material for veranda or piazzas was put on the ground that he must furnish his own and then substituted wood, the claimant owes nothing to the bankrupt estate, and is en-titled to have his claim allowed at $290 in any event.

Now, taking the transaction as it was, and considering only actual damages shown, and we find that, when the contract of September 20, 1905, was made, they agreed that the compensation of the bank-rupt for all material theretofore furnished and thereafter to be fur-nished Ward, including labor, was $1,100, from which was to be de-ducted the $200 theretofore paid. This left a balance of $900 to be paid in case the contract was fulfilled by the now bankrupt company. The bankrupt delivered certain stone, and Ward paid on account $300, leaving $600. Concrete stone for the main part of the house, viz., front steps worth $30, back steps worth $20, front door sill worth $7.50, side door sill worth $3.75, back door sill worth $3.75, and blocks

for the chimney above the roof worth $50, in all $115, were never furnished, and should be deducted from the $600, leaving $485. Stone, etc., for the veranda or piazzas according to contract were never furnished, and, assuming they were worth only $400, there could be only $85 due the bankrupt, making no allowance for damage for delay in delivery or in the erection of the house and in cutting blocks not of the size required and which have to be cut and fitted by Ward. The referee finds:

"And some of the concrete blocks furnished were not of the required size, and claimant was put to an expense for fitting them of $47.60."

This, of course, should be deducted from the $85, leaving $37.40. The referee also expressly finds:

"By reason of the delay in furnishing blocks, the house could not be inclosed until late in the fall or early winter, and the walls could not be pointed until the following spring, and as a consequence dampness and frost got into the building and damaged the plastering and the cellar bottom, so that claimant was obliged to replace a large portion of the same at an expense for replastering of $75, and repairing the cellar bottom $45 [in all $120]."

These were natural and probable consequences of a delay in delivery, and clearly within the contemplation of the parties. The concrete blocks, etc., were for a special purpose. Hence special damage was recoverable. See 2 Joyce on Damages, § 1631, p. 1684, and cases cited.

All these actual damages are unquestioned. Clearly Ward was entitled thereto, if we exclude the $10 per day as the rule of damages. Taking the above balance of $37.40 from this $120, and Ward was entitled to have his claim allowed at $82.60 over and above all sums due or owing to the bankrupt. In no event and on no theory of the contract and evidence is Ward owing the bankrupt estate. This makes no allowance to Ward for damages for delay in completing the house for occupation and consequent loss of use and occupation or for damages by reason of being compelled to use a wood veranda, in place of a concrete stone one, a matter difficult to determine, but of which there is substantial evidence. There was no substantial performance of the entire contract. The stone blocks, etc., for the house and piazzas were worth according to the contract $900, and, of this, material worth $515 was not furnished at all; that is, steps, sills, and blocks for chimney worth $115 were not even put on the ground, and blocks, etc., for the piazza, worth $400 or more, were put on the ground, but were not according to the contract, and rejected, and not used as the referee finds. This was the same as no performance at all as to this part of the contract. And it must be kept in mind that the value of the material for the piazza was fixed at $400, and this sum was not to be paid at all until such materials according to contract were furnished. It is impossible to find that a contract to furnish concrete blocks, etc., worth $900 for the erection of a house is substantially performed by furnishing such concrete blocks to the extent of $385. This contract was divisible, and, in fact, was divided by the parties themselves, as it was in legal effect expressly provided that $400 for piazza or veranda material specified was not to be paid for

until delivered. Thus, while the consideration was entire and the structure was to be a complete house, the material for the upright or main portion was to be delivered at one time and that for the piazzas or veranda at another, and $400 was not to be paid until the material for the piazzas or veranda was delivered. Therefore performance as to time of delivery and payment was divided. It follows that performance and acceptance as to the one part was possible and nonperformance and no payment of the $400 was possible as to the other. It is evident that the parties contemplated that there might be a performance as to the one part and no performance as to the other, and in case of entire failure to perform as to the piazza or veranda, which actually happened, there was to be no payment of the $400.

Hence it may be said there was a substantial compliance with the contract to deliver blocks for the house proper, but it is plain there was no compliance whatever with the contract to furnish material for the piazzas or veranda. This case is covered by Springfield Milling Co. v. Barnard & Leas Mfg. Co., 81 Fed. 261, 266, 26 C. C. A. 389, 395, and cases cited. Sanborn, C. J., in giving the opinion of the court, said:

"An action upon a contract of sale for the purchase price may be maintained by one who has substantially but not completely performed it, if the purchaser has retained the benefits of that performance. The amount of the recovery, however, will be measured by the contract price, less the damages sustained by the defendant from the failure of the plaintiff to complete its performance in the agreed time and manner—[citing cases]. Compensation for the pecuniary loss—that is, the direct, natural, and immediate consequence of a breach of a contract of sale, or of a guaranty contained in such a contract—is the just and legal measure of a purchaser's damages. The damages recoverable of a manufacturer for the breach of a contract to furnish machinery or for a breach of a warranty of its character or serviceableness, when he has agreed to furnish and place suitable machinery in operation for a known purpose, are not confined to the difference between the value of the machinery as warranted, and as it proved to be, but include such consequential damages as are the direct, immediate, and probable result of the breach"—[citing cases].

So in Reich v. Colwell Lead Co., 66 Hun, 634, 21 N. Y. Supp. 495,[1] it was held that the reasonable rentable value of a building during the period of delay in furnishing material to be used in its construction may be recovered. It is idle to say that if A. contracts to furnish brick to B. of a certain character, quality, shade, and shape for the construction of a house for $1,000, and delivers say one-third according to contract and they are used, the parties contemplating delivery as the work progresses, and he fails to deliver the remainder, that he may recover the contract price even for those delivered and used. Much less may he recover the entire contract price. And B., the purchaser, is not obligated to tear down his walls and restore those actually used or pay the full contract price for all the brick. In this case, if the contract is not divisible, the bankrupt is not entitled to be allowed anything over and above what was actually paid, as there was no substantial performance. Here the now bank-

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 66 Hun, 634.

189 F.—63

rupt company well knew the purpose for which this material was to be used. See, also, Passinger v. Thorburn, 34 N. Y. 634, 90 Am. Dec. 753; Van Wyck v. Allen, 69 N. Y. 61, 25 Am. Rep. 136; White v. Miller, 71 N. Y. 118, 27 Am. Rep. 13; Id., 78 N. Y. 393, 34 Am. Rep. 544; Messmore v. N. Y. Shot & Lead Co., 40 N. Y. 422; Booth v. S. D. R. M. Co., 60 N. Y. 487.

The referee adopted the $10 per day agreed upon as the proper rule of damages under the circumstances of this case. In this I think he was correct, and the trustee and objecting creditor filed no exception to this, and, on the hearing before me, stated that they were bound by it, or so considered themselves. The amount fixed by the agreement was under the circumstances and conditions reasonable and the damages in case of default very difficult to accurately ascertain and determine. See 2 Joyce on Damages, § 1334, p. 1469. I do not think the $10 per day should be construed as a penalty. It was not the intention of the parties to insert a penalty.

Accepting this as the true rule of damages and giving to the bankrupt estate the benefit of every doubt, the claim of Mr. Ward must be allowed at $290 over and above all claims of the bankrupt estate against him. The theory on which the $10 per day would stop running at the date the material for the veranda was put on the ground is that Ward then knew or should have known it was not according to the contract, and was at liberty to get his material elsewhere. But, then, we give him no redress for the time necessary to obtain other material. The findings of the referee as to damages and the amount that became due the bankrupt company on the contract are disapproved, and the order is reversed.

The matter is sent back to Referee Mazzy, with directions to allow the claim of Mr. Ward at $290 over and above all claims of the bankrupt against him.